RICHARD S. BLACKBURN ET AL. *vs.* GEO. T. CRAUFURD ET AL.*

ACT OF 1835, CH. 380, SEC. 3: CODE, ART. 5, SEC 21: APPEALS FROM ORDERS GRANTING INJUNCTIONS.—Under the Code, Art. 5, sec 21, the provisions of which are similar in this respect to those contained in the Act of 1835, ch. 380, sec. 3. The Answer and Exhibits ought to be sent up with the transcript of the record.

———: ———: CODE, ART. 5, SEC. 29.—According to the well settled practice, as well as in conformity with the express words of the Code, Art. 5, sec. 29, it is proper in such cases, to transmit to the Appellate Court a full transcript of the record of all the proceedings in the Court below, up to the time when the appeal was taken

PRACTICE IN COURT OF APPEALS: INJUNCTION —In reviewing an order granting an Injunction, upon appeal of the defendant after filing his answer, the Appellate Court is confined to the case presented by the bill.

This rule, however, presupposes that the order appealed from proceeds from a *Court of competent jurisdiction.* Any objection to the Injunction, based upon the want of authority in the Court, must be examined by the Court of Appeals.

CONSTITUTIONAL LAW: DISQUALIFICATION OF JUDGE: PRACTICE IN COURT OF APPEALS —The Appellate Court must recognize inhibitions imposed upon the judiciary; and if it appears from the record before it that any judge disqualified by its provisions from sitting "in any case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity within such degrees as may be prescribed by law, or when he shall have been of counsel in the case,"—has acted in such case, it will pronounce the act *coram non judice,* and void.

The fact that a judge was counsel in a case theretofore tried between two of the parties to the bill, which involved some of the issues raised in the bill, does not bring him within the letter or the spirit of the constitutional inhibition.

---

*Note by Reporter.*—This and the two succeeding cases, having been decided at the close of December Term 1863, should regularly have appeared at the end of 21 *Md. Rep.*, or at the beginning of this volume. The Reporter, in apology for their appearance out of place, submits the following explanation: It being very desirable that the two volumes should be in press at the same time, it became necessary to estimate the amount of matter likely to be included in the volume first in order, before beginning to print the next. This was done; and on the completion of the former, (the printing of the latter having in the meantime progressed to p. 446,) it was found that these cases could not be included in that volume without swelling it to an unusual, and inconvenient size: hence their insertion here at the end of the cases decided at the next succeeding term.

ORPHANS' COURT: DISTRIBUTION OF INTESTATES' ESTATES: THE CODE, ART. 93, SECS. 230, 231, plainly confers authority upon the Orphans' Court to hear and determine the question who are next of kin, and to decide between parties claiming adversely to each other, and to determine which of them are next of kin entitled to distribution.

————: ————: CODE, ART. 93, SEC. 252.—This jurisdiction is expressly given to the Orphans' Court by the sections of the Code above referred to, and is not the exercise of "a mere incidental or constructive authority," such as is prohibited by the 252nd section of the same Article.

JURISDICTION OF ORPHANS' COURT.—An order of the Orphans' Court, passed upon the petition of the administrator, directing the administrator to make distribution of the personal assets of the deceased "among the heirs at law and next of kin of the deceased named and described in his aforesaid petition," and others in equal degree, if any, and excluding certain parties claiming adversely to those who were admitted to share in the distribution,—was passed upon a matter within its jurisdiction.

Such order cannot be impeached collaterally, except on the ground that there was such impropriety in the action of the Court as will vitiate it—such as want of notice to the parties, or collusion with the administrator,—or that its passage was obtained by fraud or imposition.

APPEAL from the Circuit Court of Prince George's County.

THIS appeal is taken from an order of the Circuit Court for Prince George's County, sitting in equity, dated 21st April 1863, and granting an injunction to prevent the appellant, Blackburn, the administrator of Dr David Craufurd, deceased, from making distribution of the estate of his intestate.

The record shows that Dr. David Craufurd, late of Prince George's County, died about the 5th of December 1859. On the 12th January 1860, Richard S. Blackburn applied to the Orphans' Court of that County for administration on the personal estate of the deceased. He claimed to be the nearest of male kin to the deceased. The application was resisted by George T. Craufurd, who claimed to be nephew of the whole blood and next of kin to the deceased, and as such insisted on his right to administration. The Orphans' Court directed that each

party file his application in writing, and that the adverse party file his answer thereto, and that plenary proceedings be had thereupon.

Blackburn thereupon filed his petition for letters, averring that the intestate was never married, and that he left neither a widow, nor child, nor children, nor grandchildren, nor father, nor brother, nor sister, nor mother, so that his next of kin of inheritable blood are entitled to the personal estate of the deceased and to administration thereon; that the father of the intestate intermarried with Sarah Blackburn, sister of the petitioner's father, and had by her the intestate David and Nathaniel, Bushrod, Thomas B. and Marion Craufurd, all of whom died without ever having been married or having any issue of inheritable blood. He claims then to be first cousin of the intestate, and that he is the nearest male heir and distributee of the intestate, and entitled to administration on his estate.

To this petition George T. Craufurd filed his answer, in which he avers that Thomas B. Craufurd, one of the sons of Nathaniel Craufurd, died in the year 1848, having previously intermarried with Elizabeth Taylor, and had, as the issue of that marriage the respondent and his three sisters, who are next of kin to the deceased. He tenders himself ready to prove these averments on issues to be sent from the Orphans' Court to the Circuit Court for trial; and he therefore denies the claim of Blackburn, as next of kin, and insists that he himself is the nearest next of kin of the deceased, and as such entitled to administration.

George T. Craufurd, at the same time filed his petition, in which he reiterates his claim as the legitimate offspring of the said Thomas B. Craufurd and Elizabeth Taylor, his lawful wife. And to this petition Blackburn answered, denying that Thomas B. Craufurd ever intermarried with Elizabeth Taylor, and averring that the

petitioner and his sisters are illegitimate, being born out of lawful wedlock, and having no inheritable blood of the said Thomas B. Craufurd or Dr. David Craufurd.

Issues were then framed and transmitted to the Circuit Court for Prince George's County, whence they were removed into the Circuit Court for Charles County; and were there tried before a jury, who found by their verdict, rendered on the 21st May 1860:

1st. That the said George T. Craufurd is not one of the next of kin to the said David Craufurd, on the part of the father of the said David Craufurd.

2nd. That there is a male other than the said George T. Craufurd, of the next of kin to the said David Craufurd.

3rd. That the said Thomas B. Craufurd was never lawfully married to the said Elizabeth Taylor, either before or after the birth of the said George T. Craufurd.

Exceptions having been reserved on the part of George T. Craufurd, to the rulings of the Circuit Court, the cause was taken on his appeal to the Court of Appeals; which Court, at its December term 1860, affirmed the rulings of the Circuit Court on every exception. And the cause being remanded to the Orphans' Court of Prince George's County, that Court proceeded to grant administration on the personal estate of the intestate to the said Richard S. Blackburn.

On the 5th of April 1861, at the request of the administrator, and with the concurrence of the persons entitled as next of kin, under the hypothesis that Thomas B. Craufurd was never married to Elizabeth Taylor, Samuel H. Brooke and Thomas Berry made a distribution of the negroes belonging to the estate amongst the said personal representatives, and returned their account of distribution to the Orphans' Court of Prince George's County, by which it was approved; and on the 15th April 1862, the administrator passed an additional

account of his administration, in which he is allowed the sum of $51,210, "the original appraised value of the negroes distributed, as per distribution filed and recorded."

On the 20th January 1863, the Court passed its order "as to the residue of the personal estate now in the hands of the administrator, that he bring the same into Court as soon as, and when collected, to be invested and secured under the further orders of the Court."

On 10th March 1863, on the application of Blackburn, by petition, and after argument by counsel for Blackburn, and for Craufurd and his sisters, the Orphans' Court ordered that the administrator make distribution of the personal assets of the deceased "among the heirs at law and next of kin of the deceased, named and described in his aforesaid petition, and others in equal degree of relationship on the maternal and paternal side of the deceased, if any"—and stating that the said Blackburn, as administrator, has, with the approbation of the Orphans' Court, "appointed Tuesday, the 21st of April next, for the final settlement and distribution of the personal estate of the deceased, of the assets in hand, when and where all the creditors and heirs at law and next of kin of the said deceased, other than George T. Craufurd and his sisters, and those who have heretofore claimed and do now claim under an alleged marriage between the late Thomas B. Craufurd and one Elizabeth Taylor, are notified to attend the Orphans' Court of the County, with their claims properly vouched, or they may otherwise, by law, be excluded from all benefits in the said deceased's personal estate;" and provision is made for the due publication of that order.

This order was passed in the presence of Craufurd and his sisters, who, without appealing from the order, on the 21st April 1863, filed their bill of complaint, on the

equity side of Prince George's County, which is the beginning of the present litigation.

The bill is filed against Blackburn and others, who claim in privity with him, and adversely to Craufurd and his sisters; that is against the persons who by the last order of the Orphans' Court had been declared to be next of kin to the intestate: It states in substance, the death of Dr. David Craufurd, in December 1859, intestate, and leaving a large real and personal estate, and that on the 23rd of March 1861, administration on the personal estate of the intestate, was granted to Blackburn, who, before that time, had entered upon and taken possession of all said real and personal estates; that the complainants are the only children and heirs at law, of Thomas B. Craufurd, a brother of the intestate, and who died in the lifetime of the intestate, and that as such children, they are the only next of kin of the intestate, and sole distributees of his personal estate; that the intestate left other relatives of a more remote degree than the complainants—all of whom, including Blackburn in the number, are made defendants to the bill; and that, nevertheless, Blackburn, in concert and collusion with said other parties, had administered the said personal estate, in so far as he has proceeded with the same, upon the supposition, that he and the said other parties, and not the complainants, are the true next of kin to the intestate; that the complainants brought their action of ejectment, in the Circuit Court for Prince George's County, against Blackburn, to recover the real estate of the intestate; and that the action was removed by Blackburn into the Circuit Court of the United States, in which Court, at December Term 1862, a verdict and judgment thereon, was rendered for the plaintiffs, thereby judicially affirming the right of the complainants to the real estate of the intestate, as his only true next of kin.

The bill states further that the complainants have insti-

tuted in the Circuit Court for Prince George's County, four several suits against Blackburn and the sureties on his administration bond, to recover their respective shares of the said personal estate, and that said actions are yet pending, and they avow their determination to prosecute the same with effect; that the sureties on the administration bond, for the most part, reside in Virginia, and all of them pretend to be next of kin of the intestate, and are acting together in concert and collusion with Blackburn to possess themselves of the said estate; that said bond was not at any time an adequate security for the due administration of the said estate, but in the present distracted state of the country, is altogether insufficient as a security to the complainants; that Blackburn did heretofore, without having obtained an order of the Orphans' Court for the purpose, remove into the State of Virginia a large number of the negroes belonging to the said estate, where they still remain; and that, without the authority of said Court, and in a manner contrary to law, he has distributed the same negroes amongst the parties so recognized by him to be the next of kin, and that he has returned to the Orphans' Court a paper, purporting to be a statement of such distribution, a copy whereof is Exhibit A, filed with the Bill.

It states also that in a similarly unauthorized and illegal manner, the said Blackburn has assumed to distribute amongst the said pretended next of kin, other large and valuable portions of the said personal estate to the exclusion of the complainants; and avers that, acting in concert and collusion with the said sureties and pretended next of kin, he is about hastily to distribute the residue of the said personal estate amongst the said pretended next of kin, so that the same may be removed beyond the State, and the complainants will be unable to obtain possession of any part thereof, even if they should recover in their actions aforesaid;

454 MARYLAND REPORTS.

Craufu...'s Adm'r ... vs. Craufurd et al.

that heretofore, the complainants filed their petition in writing, to the Orphans' Court, against Blackburn, in which the said Court was prayed to pass an order, annulling the said distribution, and requiring Blackburn to give additional security; and the said Orphans' Court did determine that the complainants were entitled to the relief prayed, and would have passed an order requiring a new bond, but Blackburn acting through his counsel, then present in Court, in order to avoid the passing of said order, did consent and' agree to and with the petitioners that an order should be passed for bringing into Court, all the property of the said estate not administered, in order that the same should be invested to abide the event of the litigation then and now pending between the parties as before stated; and on the 19th January 1863, the Court did accordingly pass such an order, of which their Exhibit B, is averred to be a copy; that notwithstanding said order, and the agreement and compromise aforesaid, the said Blackburn afterwards applied to the Orphans' Court, by petition, asking the Court to allo whim to distribute the said property amongst the said pretended next of kin, to the exclusion of the complainants; and the said Court, on the 10th March 1863, did accordingly pass such an order, appointing the 21st April 1863, as the time for making such distribution amongst the said pretended next of kin, to the exclusion of the complainants.

And finally, it states that the time allowed by the last mentioned order, was so short as to render it impossible for the complainants to originate any other proceeding than the present, for their protection; and therefore, they pray for an injunction to prevent Blackburn from making further distribution, and the other parties from receiving any part of the said estate, until the further order of the Court, &c.

On the sa · lay, an order was passed by the Circuit Court, (BRENT, J.,) that an injunction issue as prayed, on the complainants filing a bond, on the penalty of fifteen hundred dollars, conditioned in the usual form. And a bond having been filed, the injunction was issued on the same 21st April 1863.

On the 23rd April 1863, the Judge of the Circuit Court, filed with the clerk, his reasons for declining to sit in the cause. The reason, briefly is, that he had been counsel in a case heretofore tried between two of the parties to said bill, which involved some of the issues raised in said bill.

On the 30th May 1863, the defendants filed their answer to the bill, and on the same day the defendants moved to dissolve the injunction. On the 6th of June 1863, *Oliver Miller*, Esq., under an agreement of the parties, accepted the appointment of special Judge in the case, and on the 22nd of August following filed proof of his qualification as such. On the 17th of September 1863, the defendants moved that an early day be assigned for hearing the motion to dissolve, and also that the penalty of the injunction bond be enlarged, and these motions were set down for hearing on a particular day, but the hearing was postponed from time to time, and while still pending, the defendants, on the 2nd of December 1863, appealed from the order granting the injunction.

As a preliminary motion, the appellees applied to this Court for a writ of diminution, because of the record erroneously containing the proceedings in the case subsequent to the bill and exhibits.

This motion was first argued before BOWIE, C. J., and BARTOL, and GOLDSBOROUGH, J.

*Thomas G. Pratt* and *Edward W. Belt*, for the appellees, cited Code, Art. 5, sec. 12. *Wagner et al. vs. Co-*

hen, 6 *Gill,* 101. *Guyton vs. Flack,* 7 *Md. Rep.,* 398--402. *Alexander vs. Worthington,* 5 *Md. Rep.,* 471.-477.

*Thomas S. Alexander* and *William Schley,* for the appellants, cited Act of 1835, ch. 380. Code, Art. 5, sec. 29. *Keighler et al vs. Savage Manuf'g Co.,* 12 *Md. Rep.,* 383. *Pue vs. Richter,* 9 *G. & J.,* 475.

And thereupon the Court, by BARTOL, J., delivered the following opinion.

The question on this motion involves simply the inquiry, whether the transcript of the record sent before us is erroneous, by reason of its containing the proceedings in the cause before the Circuit Court, subsequent to the bill and exhibits accompanying it, as suggested by the appellees. Under the Act of 1835, the filing of an answer is made a condition precedent to the exercise of the right of appeal, conferred by the Act, from an order granting an injunction. Under this provision, it was held in *Keighler's case,* 12 *Md. Rep.,* that an insufficient answer is no answer, and if the answer be insufficient the appeal will be dismissed. The provisions of the Code are in this respect the same as the Act of 1835. It would seem to be clear, therefore, that in every case the answer and exhibits ought to be sent up with the transcript. The uniform and unvaried practice since the Act of 1835, in cases of appeals from orders granting injunctions has been to transmit to the Appellate Court, a full transcript of the record of all the proceedings in the Court below, up to the time when the appeal was taken. It is very obvious that to depart from this practice might in many cases, place the Appellate Court in the position of deciding upon an immaterial question. Because the subsequent proceedings might disclose the fact that the objections to the injunction have been waived, or the appeal withdrawn, or other facts forming the question presented by the "appeal

to be immaterial. How far the proceedings subsequent to the bill and exhibits, filed by the complainant, are to be considered, if at all in this case, we do not now express any opinion. We consider that according to the well settled practice in such cases, as well as in conformity with the express words of the Code, Art. 5, sec. 29. The motion of the appellee ought not to be granted.

Afterwards the arguments of Solicitors were heard upon the question. 1st. Of the alleged disqualification of the Judge of the Circuit Court to pass the order appealed from; and 2nd. as to the propriety upon the appeal, of examining the whole record; which argument was heard before BOWIE, C. J., and BARTOL and GOLDSBOROUGH, J.

*Thomas S. Alexander* and *William Schley*, for the appellants, cited on 1st point: Const. Art. 4, sec. 22. *Buckingham vs. Davis*, 9 *Md. Rep.*, 329. *Sheldon vs. Newton*, 3 *Ohio*, (*N. S.*,) 494, 499. *Chemung Bank vs. Judson*, 4 *Seld.*, 254. *State vs Richmond*, 6 *Foster*, (*N. H.*,) 232. *Michales vs. Hine*, 3 *Green*, (*Iowa*,) 470. 16 *Eng. Law and Eq.*, 63. *Gregory vs. C. C. & C. Riv. Co.*, 4 *Ohio*, 675. *Baldwin vs. McArthur*, 17 *Barb.*, 414, 422. 5 *Porter*, (*Ind.*,) 230. *Heydenfeldt vs. Towns*, 27 *Ala.*, 423. *Grinstead vs. Buckley*, 3 *George*, (32 *Miss.*,) 148. *Cabot Bank Case*, 26 *Conn.*, 7. *State vs. Collins*, 5 *Wis.*, 339. *Wash'n Ins. Co. vs. Price*, 1 *Hopkins*, (*N. Y.*,) 1. *Edwards vs. Russell*, 21 *Wend.*, 63.

And they cited on the 2nd point: *Jarrett vs. The State*, 16 *Md. Rep.*, 309. *Penn vs. Brewer*, 12 *G. & J.*, 113. *Wood vs. Bruce*, 9 *G. & J.*, 215. *Hilton vs. Lord Granville*, 4 *Beavan*, 130. *Daglish vs. Jarvie*, 2 *McN. & G.*, 231. *Reynolds vs. Pitt*, 19 *Ves.*, 138. *Union Bank vs. Poultney*, 8 *G. & J.*, 332.

*Thos. G. Pratt* and *Edward W. Belt,* for appellees, cited on the 1st point: Code, Art. 5, sec. 27. 1 *Bland Ch. R.* 191.

And on the 2nd point, they referred to *Union Bank vs. Poultney*, 8 *G. & J.*, 332.

Whereupon the Court, by BOWIE, C. J., delivered the following opinion.

The decision of this Court in *Wagner vs. Cohen*, 6 *Gill*, 101, that in reviewing an order granting an injunction upon appeal of the defendant after filing his answer, we are confined to the case presented by the bill, is so founded on reason and the nature of appellate jurisdiction, and sustained by a series of concurrent decisions, that it must be adhered to in all similar cases. That decision, however, and all which have followed it pre-suppose that the order appealed from proceeded from a Court of competent jurisdiction. Any objection to the injunction, based upon the want of authority in the Court, and shown by the record of its proceedings must be examined here, otherwise there would be no restraint upon the usurpation of authority by inferior tribunals, or persons pretending to act under official sanctions. This Court must recognize the Constitutional inhibitions imposed upon the Judiciary, and if it appears from the record before it, that any Judge, disqualified by its provisions from sitting "in any case wherein he may be interested, or where either of the parties may be connected with him by affinity or consanguinity within the degrees prescribed by law, or where he shall have been of counsel in the case" has acted in such case, they will pronounce the act *coram non judice*, and void.

The record in this case does not, however, in the opinion of this Court, furnish any evidence of such disqualification. The learned Judge from whose order this appeal is taken, with a commendable candor and delicacy has placed upon the record, as a part of the proceedings in the cause the following memorandum: "Inasmuch as I was counsel in a case heretofore tried between two of the

parties to said will which involved some of the issues raised in said will, I think it would not be proper for me to sit at the final hearing of this cause. I therefore, now refuse to sit in said cause, and hereby direct my refusal so to sit, to be entered by the clerk."

The fact that he was counsel in a case theretofore tried between two of the parties to the said bill, which "involved some of the issues raised in the bill," does not bring him within the letter or spirit of the Constitutional inhibition. The former requires he shall have been of counsel in the case then before him; the latter, that he should be obnoxious to some suspicion of interest or bias by reason of his former connection. The Judge's memorandum shows that the case in which he had been of counsel had been tried and disposed of, and that it involved two of the parties and some of the issues raised in the bill then pending. Fully appreciating the inestimable value of judicial purity and impartiality, we cannot through morbid apprehension of suspicion, adopt such a construction of the Constitution, as would deprive the State of the services of its most learned counsellors. If the circumstance of the judge having been of counsel, for some parties in some case involving some of the issues which had been theretofore tried disqualified him from acting in every case in which any of those parties, or those issues should be subsequently involved, the most eminent members of the bar, would, by reason of their extensive professional relations and their large experience be rendered ineligible, or useless as judges. The relation of client and counsel ceases when the case is tried. There is no such continuing interest or bias after its termination, as would justify the exclusion of the latter from the highest trust and confidence as a judge or a man. Under our present judicial system, equity as well as law is administered by a single judge, in districts of extensive territory and large population. It is of the utmost importance

that the judges should be as free to act, as the various contingencies and exigencies of society may require. If they are hedged around by indefinable restraints of supposed interest or bias, equity and justice must often be denied to the people. The penalties imposed by law, on the actual abuse of their authority, are sufficient to prevent them, as others, from violating their obligations. For these reasons we think the constitutional qualifications of the judge being unimpeachable, the appellants must confine themselves in the argument of this appeal, to the facts presented by the bill and its exhibits.

The question as to whether the injunction was properly granted upon the case presented by the bill and exhibits, was then argued before BOWIE, C. J., and BARTOL and GOLDSBOROUGH, J.

*Thomas S. Alexander* and *William Schley*, for appellants.

I. The case made by the bill and its accompanying exhibits, is a case of conflict of title between the complainants on the one side, and the defendants on the other. Each party claims to be nearest of kin to Dr. David Craufurd, the intestate. The bill avers that the complainants severally have brought actions at law against the administrator to test their right, and they pray for an injunction to stay distribution of the personal estate of the deceased, until trial had of those actions.

1. No documentary evidence of the pendency of those actions is supplied. This is a conclusive objection. *Union Bank vs. Poultney,* 8 *G. & J.,* 324. *Nusbaum vs. Stein,* 12 *Md. Rep.,* 318.

2. The first equity alleged in the bill is, that the sureties to the administration bond were originally insufficient; and have become yet more inadequate by reason of the distracted state of the times. The Orphans' Court

is the exclusive judge of the sufficiency of the bond taken by itself or its authority. *Alexander vs. Stewart,* 8 *G. & J.,* 226.

3. Their second equity is, that the administrator is about to make distribution of the personal estate amongst the parties whom he recognizes as the next of kin, to the exclusion of the complainants; and that those persons will remove the property beyond the limits of the State, before recoveries can be had in the action before mentioned. The bill does not ask that equity shall take the property under its control, with a view to a distribution thereof by its authority.

Now the recovery at law must be for damages equivalent in value to the property which, by force of the verdict and judgment, will become the absolute property of the administrator; so that if it is found in the proper bailiwick after recovery had, it may be taken under the execution of the plaintiffs as the individual property of the defendant, Blackburn. The conclusive answer to the equity alleged therefore is, that a plaintiff, suing at law, has no right to require that equity shall restrain the defendant in the exercise of dominion over his property pending the litigation. *Rich vs. Levy,* 16 *Md. Rep.,* 74. *Uhl vs. Dillon,* 10 *Md. Rep.,* 500. *Smallwood vs. Chaney, M. S.*

A second objection is that the Orphans' Court had full authority to delay distribution, and to provide for the safe-keeping of the estate. Code, Art. 93, sec. 237. *Glenn vs. Fowler,* 8 *G. & J.,* 347. *Loomis vs. Loomis,* 27 *Penn. S. R.,* 233.

In fact the bill charges that the complainants did, by their petition to the Orphans' Court, ask that Court to take order, for the security of the estate, and in consequence thereof, adequate relief was given by the order passed 20th January 1863. But this order was, on further consideration, superseded by the order of the 10th March 1863, which ordered a distribution to be made amongst

Craufurd's Adm'r et al. *vs.* Craufurd et al.

the parties claiming adversely to the complainants, and to the exclusion of the complainants. This order was passed in the presence of the complainants, and in the exercise of jurisdiction which they had invoked. They might have appealed from the order, and they ought to have done so, if they deemed they were aggrieved thereby. Code, Art. 5, sec. 30.

4. And this answers the last equity alleged, to wit: that the time allowed by the last mentioned order, that is to say, forty-two days, was too short to enable them to originate any other proceeding than the present for their protection in the premises. An appeal would *per se* have suspended the distribution. *State, use Calvert vs. Williams*, 9 *Gill*, 172. *Edelin vs. Edelin*, 10 *Md. Rep.*, 52. And they had no right to abandon that remedy, which was ample, and to invoke another jurisdiction. *Snyder vs. Snyder*, 1 *Md. Ch. Dec.*, 295. *Brookes vs. Delaplaine, Ib.*, 351.

5. The order was passed by the Orphans' Court in the exercise of the power conferred on it by the Code, Art. 93, sec. 230, to direct the conduct and settling of the accounts of executors and administrators to superintend the distribution of the estates of intestates, and administer justice in all matters relative to the affairs of deceased persons, (*Duvall vs. Harwood*, 1 *H. & G.*, 474. *Williams vs. Holmes*, 9 *Md. Rep.*, 28,) and by sec. 231, to examine, hear and determine upon all claims between legatees or persons entitled to any distributive share of an intestate's estate, and executors and administrators. It adjudicates upon, and was designed as an adjudication of the conflicting claims of the complainants and defendants, and no appeal being taken therefrom, and the time for appeal having elapsed before the present bill was filed, (Code, Art. 5, sec. 39–43,) the order is now final and conclusive upon such question of right.

DECEMBER TERM 1863.                    463

Craufurd's Adm'r et al. vs. Craufurd et al.

Where Courts have concurrent jurisdiction and one of said Courts has actually exercised its authority, the Court also having jurisdiction over the subject-matter either from *comity* or *necessity* will respect the action of the first tribunal. *Brooks vs. Delaplaine*, 1 *Md. Ch. Dec.*, 351. *Snyder vs. Snyder, Ib.*, 295. *Fridge vs. State*, 3 *G. & J.*, 103. *Negro John vs. Morton*, 8 *G. & J.*, 391.

6. As giving color to the allegation that the administrator was about to remove the personal estate yet in his hands beyond the State, it is averred that he had already made an illegal distribution of negroes amongst the persons claiming as next of kin adversely to the complainants, and that those negroes had been removed. Their own exhibit shows that this distribution was sanctioned by the Orphans' Court, and was approved expressly by that tribunal. The Court thereby adjudicated and designed to adjudicate that the persons amongst whom distribution of the negroes was made, were entitled as next of kin to distribution thereof. It is not pretended that the complainants had not timely notice of this distribution. No excuse is given for their failure to appeal from the order of approval. Nor is any relief prayed for against that distribution. This distribution is therefore to be treated as *res adjudicata*.

II. As the order approving the distribution made of the negroes, and the order directing the distribution of the residue of the estate, were passed in the exercise of a clear jurisdiction, they are not to be impeached in this collateral manner. The appropriate remedy was by an appeal.

If any doubt can possibly be entertained in regard to the conclusiveness of the distribution already made of the negroes, and of the order of 10th March 1863, directing a distribution of the remaining personal estate to be made amongst the defendants below, to the exclusion of Craufurd and his sisters—it will be insisted:

1. That the verdict on the third issue, and the grant of letters thereupon conclusively proves that Thomas B. Craufurd, the putative father of George T. Craufurd and his sisters, was never married to Elizabeth Taylor, their putative mother; and therefore negatives the right of Craufurd to share in the distribution of the estate of David Craufurd, as one of his next of kin. That the grant of administration, after contest involving the question of legitimacy of one of the parties is conclusive of the same question on a claim to distribution, is declared by *Barrs vs. Jackson, 1 Phill.*, 582. *Bouchier vs. Taylor*, 4 *Br. P. C.*, 708. *Thomas vs. Ketteriche,* 1 *Ves.*, 333. *Blackham's case,* 1 *Salk.*, 290, is to the same point, when the determination of the first case, is on the precise point; as marriage *vel non. Hargr. Law Tracts*, 458, 472.

Those decisions are the necessary conclusions from the rule that the judgment of a court of competent jurisdiction directly upon the point is conclusive between the same parties upon the same matter coming in question in another cause. *Duchess of Kingston's case,* 2 *Smith's Leading Cases*, 424. *Trevanian vs. Lawrence, Ib.* 435. After a precise issue has been found against a plaintiff, he may not bring an action and agitate the whole matter over again. *Outram vs. Morewood*, 3 *East.*, 346.

*Thomas G. Pratt* and *Edward W. Belt*, for appellees, contended:

1st. That the bill in this cause presents a case which justified the granting of the injunction. The equities set forth, are in themselves ample for that purpose.

2nd. That the objection of the appellants by reason of the non-filing of the records of the four pending suits of the appellees, is untenable, and the authorities cited by them are relied on.

3rd. The other objections of the appellants to the equities of the bill are equally untenable, even if properly

Craufurd's Adm'r et al. *vs.* Craufurd et al.

before this court at all, as we contend they are not. We desire to cite no authorities beyond those adduced by the appellants.

4th. With reference to the appellants' points relating to an alleged verdict in the Charles County Court, the appellees insist that the same are not properly before this Court, nor cognizable upon this appeal.

But if the counsel for the appellants shall, nevertheless, be permitted to argue them, we insist that the conclusions arrived at by the appellants are erroneous, and refer to the following authorities. *Apsden vs. Nixon*, 4 *Howard S. C.*, 467. 3 *Bouvier Inst.*, 374. *Thompson vs. Roberts*, 24 *Howard S. C.*, 240. *Barrs vs. Jackson*, 1 *Younge & Collyer*, (*New Rep.*,) 585. *Warford et al. vs. Colvin*, 14. *Md. Rep.*, 545. *Greenleaf Ev.*, secs. 22, 532. *Arnold vs. Arnold*, 17 *Pickering*, 4, 9, 12.

BARTOL, J., delivered the opinion of this Court.

The allegations contained in this bill of complaint are clearly sufficient to entitle the appellees to the injunction prayed, unless it appears upon the face of the proceedings that the complainants have no title or right as distributees. Their want of title it is said, appears, by the order of the Orphans' Court of the 10th of March 1863, exhibited with the bill (marked C.) This order the appellants contend, was a decree by a court of competent jurisdiction, conclusively deciding that the appellees were not entitled as next of kin, to distribution of the personal estate of Dr. David Craufurd, deceased. We are of opinion that under the 230th and 231st sections of Article 93 of the Code, the Orphans' Court had jurisdiction to pass "the order of the 10th of March." The power "to *superintend the distribution of the estates of intestates*," and "*to examine, hear and decree upon all accounts, claims and demands existing between legatees or persons entitled to any distributive share of an intestate's estate and executors and admin-*

*istrators,* and to enforce obedience to, and execution of
their decrees in the same ample manner as Courts of
Equity," plainly confers authority upon the Orphans'
Court to hear and determine the question who are next
of kin, and to decide between parties claiming adversely
to each other, and determine which of them are next of
kin entitled to distribution. This jurisdiction, we con-
sider, is expressly given to the Orphans' Court by the
sections of the Code above cited, and is not the exercise
of a "mere incidental or constructive authority," such as
is prohibited by the 252nd section of the same Article.

In this case the order of the 10th of March was passed
by the Orphans' Court of Prince George's County upon a
matter within its jurisdiction. If erroneous, the remedy
of the parties aggrieved was by an appeal, to have it
reviewed and reversed. It cannot be impeached collat-
erally, except on the ground that there was such impro-
priety in the action of the Court as will vitiate it, such as
want of notice to the parties, or collusion with adminis-
trator, or that its passage was obtained by fraud or impo-
sition. In this case the bill alleges substantially that the
complainants had before made application to the Orphans'
Court by petition, to annul a distribution theretofore made
by the administrator, and to require of him the execution
of a new administration bond with sureties to be residents
of Maryland, the original bond being alleged to be insuffi-
cient; and that the Orphans' Court upon that petition
determined that the petitioners were entitled to the
relief prayed, and were about so to decree, when "the
respondent, Blackburn, by his counsel then present in
Court, in order to avoid the passage of such order, did
consent and agree to and with the complainants that an
order should be passed bringing into Court all the pro-
perty of the estate unadministered, to be invested so that
the same might abide the result of the litigation then
pending in the Circuit Court between the complainants

Craufurd's Adm'r et al. *vs.* Craufurd et al.

and Blackburn and others, touching the title to the property, and that it was thereupon agreed that the Court should refrain from the passage of any order requiring a new bond, and that an order should be passed to the purport above set forth; and that on the 20th day of January 1863, such an order was actually passed, which is exhibited with the bill marked B.

The bill further alleges that the order of the 10th of March was passed in violation of the aforesaid consent and agreement, and in direct opposition to the terms of the previous order. And the bill charges that it is the design of the administrator, acting under color of the order of the 10th of March, in collusion with his sureties and pretended next of kin, to deliver the property into their "possession and fraudulently to deprive the complainants of the same."

None of the proceedings of the Orphans' Court which led to the passage of the order of the 10th of March, are exhibited with the bill, neither the petition, answer nor proofs are exhibited, nor does the order purport to have been passed after notice to the parties interested; although on its face it is stated that the counsel of these complainants were present when the order was passed, and were heard in argument. With this imperfect exhibition of the proceedings in the Orphans' Court, we are unwilling to express "an opinion upon the conclusiveness of the order, to bar the appellees from claiming as distributees." Especially in view of the charge of fraud made by the bill, and of the allegation contained in the bill that these complainants as next of kin had instituted suits at law in the Circuit Court for Prince George's county, to recover their distributive shares, which were then, and still are pending.

Under these circumstances we deem it equitable to affirm the order granting the injunction, leaving for future consideration, the question of the effect of the

proceedings in the Orphans' Court, when, upon the motion to dissolve the injunction there shall be a more "full disclosure" of those proceedings and the Court's judgment thereon, may be pronounced with more certainty.

We shall, therefor, sign a decree affirming the order appealed from, and remanding the cause for further proceedings.

*Order affirmed and cause remanded.*

(Decided June 3rd 1864.)