(118 App. Div. 356)

### HASELL v. BUCKLEY.

(Supreme Court, Appellate Division, First Department.    March 22, 1907.)

1. APPEAL—LAW OF THE CASE—CONSTRUCTION OF FORMER JUDGMENT.

While an interlocutory judgment, affirmed on a former appeal, is the law of the case, yet, there being some ambiguity as to its provisions, it will not be interpreted so as to do manifest injustice.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4358.]

2. CONTRACTS—CONSTRUCTION—SUBJECT-MATTER.

Where plaintiff's testator, being the purchasing agent of corporations, transferred such business to defendant, on the agreement that he should be paid half the commissions received by defendant during continuance of such contract as testator might succeed in inducing the corporations to enter into with defendant to act as purchasing agent for them, and through testator's efforts the corporations designated defendant as purchasing agent temporarily, and the employment so continued without any specific contract till some time after testator's death, when a special contract was entered into by such corporations with defendant, such latter contract was not procured by testator, so as to entitle his estate to a share of the commissions earned under it.

Appeal from Order Entered on Report of Referee.

Action by Adelia A. Hasell, individually and as executrix of Bently D. Hasell, deceased, against Leander J. Buckley, individually and doing business under the firm name of L. J. Buckley & Co. From a judgment for plaintiff entered on the decision of a referee, defendant appeals. Modified and affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

John A. Straley, for appellant.
H. H. Snedeker, for respondent.

HOUGHTON, J.   The appeal is from a final judgment in an action for an accounting respecting commissions received by defendant as purchasing agent for certain Cuban railway companies.

Plaintiff's testator was purchasing agent for these corporations, and on the 12th day of March, 1900, he transferred such business to defendant on the agreement that he should be paid one-half the com-

missions received by the defendant during the continuance of such contract as the plaintiff's testator might succeed in inducing the companies to enter into with defendant to act as purchasing agent for them. Plaintiff's testator died shortly after this agreement was made, but through his efforts the companies designated defendant as purchasing agent temporarily, and the employment so continued without any specific contract until April 9, 1903, when a special contract was entered into by them with defendant. With this latter contract plaintiff's testator, of course, had nothing to do, aside from the fact that he had before his death brought the defendant and the companies together, and had induced the companies to enter into relations with defendant of an indefinite character, which had continued until the specific contract was entered into. On the 19th of December, 1904, the plaintiff obtained an interlocutory judgment for an accounting, which, in connection with the findings upon which it was based, might be construed as adjudging that the plaintiff was entitled to an accounting for one-half of all commissions received by defendant from the Cuban companies from March 12, 1900, to the time when defendant ceased to act as purchasing agent for them, however long that might be, and by whatever contract with them he should so act. On appeal to this court that judgment was affirmed without opinion. 104 App. Div. 630, 93 N. Y. Supp. 1134.

Of course, under ordinary conditions, an interlocutory judgment passed upon by this court establishes the law of this court respecting the final judgment. Where, however, as in the present case, there is some ambiguity as to its provisions, it will not, and ought not to, be interpreted so as to do manifest injustice.

The contract of April 9, 1903, not having been procured by the plaintiff's testator, the accounting should have proceeded only to the date of that contract. The allowing to plaintiff of one-half the net commissions earned by defendant up to that time is a liberal interpretation of defendant's contract, and all that should be permitted. From the account filed on the hearing before the referee there can be no difficulty in ascertaining the amount of the net commissions earned by defendant up to April 9, 1903, and the judgment should be modified by allowing such commissions to that time only, and by striking out the provisions of the judgment that plaintiff is entitled to any accounting subsequent to that date, and, as so modified, the judgment should be affirmed, without costs. All concur.

INGRAHAM, J. (concurring). This action was referred to a referee to hear and determine. The referee filed a report directing an interlocutory judgment which required the defendant to account for the commissions that he had received from certain Cuban railways, and upon that report an interlocutory judgment was entered, which was affirmed by this court. The cause of action sought to be enforced was based upon an agreement between the plaintiff's testator and the defendant, and the relief asked was that the defendant "make and render his account of the moneys received by him as aforesaid, and for his actions as trustee as aforesaid"; that "upon the completion of said

accounting he be decreed to pay over to this plaintiff such sum as shall be ascertained to be due her from said defendant."

The interlocutory judgment ordered and adjudged:

"That the defendant within 20 days after service of a copy of this judgment do account to the plaintiff and file his accounts herein, setting forth in separate items the amount of commissions received or entitled to be received by the defendant individually or the firm of L. J. Buckley & Co., since March 12, 1900, as purchasing or shipping agents for the Western Railway of Havana, Limited, and the Cuban Central Railways, Limited, and either of them."

That question whether the defendant should pay over to the plaintiff one-half of the gross or one-half of the net profits should be left open for further evidence. There was no adjudication until the accounting took place as to the amount that was due to the plaintiff from the defendant, or the commissions that the defendant received from these Cuban railways that were embraced within the contract between the plaintiff's testator and the defendant. The judgment quite properly required the defendant to file his accounts of such commissions, and, the amount of the commissions with the date of their receipt being before the referee, he could then on the accounting determine the amount due under the contracts from the defendant to the plaintiff. Upon an appeal from the interlocutory judgment which merely required the defendant to file his accounts, this court was not called upon to pass upon the question as to the period during which the plaintiff would be entitled to recover, or the amount of the recovery, and the affirmance of the interlocutory judgment was not an adjudication that the plaintiff would be entitled to recover for all the commissions that the defendant had received or would in the future receive from these Cuban railways. What the interlocutory judgment determined, which determination we affirmed, was that the defendant should be required to file the accounts, the amount of recovery, including the period during which the defendant would be chargeable with one-half the commissions received, and the amount of the commissions to be determined on the accounting. The referee proceeded with the accounting, and made and filed his final report. By this final report he decides that, "under the agreement between the defendant and said Bently D. Hasell, defendant obligated himself to pay one-half of the net profits, when realized by him, in the conduct of said business, and not one-half of the gross profits thereof"; that the defendant had received commissions in the accounts involved in this action from the 12th of March, 1900, to and including July 31, 1905, amounting to the sum of $16,721.52; that there were certain allowances to which the defendant was entitled for expenses of conducting the business, and that the defendant was entitled to be credited with certain money that he had paid in settling up the business affairs of the plaintiff's testator after his death; and that by the adjustment of this account there was a balance due to the plaintiff of $2,738.36, and judgment was therefore directed for the plaintiff for that sum, which judgment provided that the plaintiff might from time to time apply to the court at the fact of the judgment for a further accounting of the commissions subsequently received, and final judgment was entered in conformity with this report.

From the evidence it appeared that on March 12, 1900, the plaintiff's testator had for some time acted as purchasing agent of certain Cuban railroads, and that immediately prior to March 12th his health had broken down so that he was unable to continue such business. He stated to the defendant, then doing business under the name of L. J. Buckley & Co., that he had a contract by which he was purchasing and shipping agent of certain Cuban railroads, and applied to the defendant to undertake the continuance of this business under the terms of this contract with these railroads, the defendant to pay to him one-half the commissions paid by the said railways; that he would aid defendant in every way to obtain a contract with said railway companies, upon terms similar to their contract with him, it being understood that defendant is to pay to his order, or to whom he may designate, one-half the commissions the defendant would receive from said railways, this agreement to continue during the term that a contract may be entered into between defendants and said railways, and this proposition was accepted by the defendant. The plaintiff's testator then wrote to the railway companies, stating the condition of his health; that he had transferred his business to the defendant, and asking that the contract be continued, and requesting that the company appoint the defendant his successor. In pursuance of this recommendation, the railway companies on the 12th of April addressed letters to the defendant stating, that in view of the recommendation of Mr. Hasell:

"We are disposed to leave the business that we have confided to his hands in your hands temporarily, say until the end of this company's financial year, June 30th, next, when the matter will be taken up definitely."

Under this arrangement the defendants continued to act until April 9, 1903, when a new arrangement was made by which the defendants were to attend to the purchase of supplies for the railways, the defendants to do the work under the same terms and at the same rate of commissions that they had theretofore received, and it was further arranged that the defendants were to make payments on behalf of the companies if remittances did not reach him in time, he to receive interest at the rate of 6 per cent. per annum upon the amount of his disbursements from the actual date of payment until remittances were received. After April 9, 1903, the business was transacted by the defendant under the new contract and has so continued to the present time. The referee allowed one-half commissions received from April, 1903, down to the date of his report, and I think this was error. The plaintiff died on the 29th day of May, 1900, a little over two months after the arrangement was made. The agreement under which the parties acted was that the plaintiff's testator was to aid the defendant in every way to obtain a contract from the railways, and, in consideration of this transfer of the business and the services of the plaintiff's testator, the defendant was to pay to him "one-half (½) the commissions you would receive from said railways, this agreement to continue during the term that a contract may be entered into between yourselves and said railways." It is thus clear that the arrangement was to continue during the period that a con-

tract obtained through the testator's intervention should continue. A contract with the railway companies was obtained which was to last until the 30th of June of the same year, and before the term of that contract expired the plaintiff's testator died; but, as no new contract was made, but the business continued under this temporary arrangement, I think it may be said that, so long as the arrangement continued under the contract which was obtained as a result of the application of plaintiff's testator to the railway companies, the arrangement was continued, and thus, I think, the plaintiffs were entitled to one-half of all its commissions received down to the 9th of April, 1903, when the new contract was made between the defendant and the railway companies, and the defendant ceased to act under the contract which had been obtained at the solicitation of the plaintiff's testator.

I think, therefore, that it was error for the referee to include in a recovery any amount of commissions received by the defendant after April 9, 1903, and that the recovery should be limited to the amount received prior to that date. As it would appear that the amount can be ascertained from the accounts submitted by the defendant, the judgment should be modified by restricting the recovery to the amount due in accordance with this opinion, and the judgment, as modified, should be affirmed, without costs.