(80 Misc. Rep. 570.)

## SEAWARD v. TASKER.

(Supreme Court, Trial Term, Kings County. May 7, 1913.)

1. MONEY RECEIVED (§ 1*)—RIGHT OF ACTION.
    To recover in an action for money had and received, plaintiff must prove that he is more entitled to the money in equity and good conscience than is defendant; the action being based on equitable principles.
    [Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. § 1;* Contracts, Cent. Dig. § 1591.]

2. APPEAL AND ERROR (§ 1194*)—INTERMEDIATE APPEALS—MODIFICATION OF JUDGMENT.
    While ordinarily the affirmance by the Court of Appeals without qualification of an interlocutory judgment establishes the law, where the interlocutory judgment is affirmed "as modified," and the opinion for affirmance shows that the Court of Appeals holds the law to be different from that determined by the interlocutory judgment, such judgment is deemed modified to conform to the opinion of the Court of Appeals.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4648–4656, 4660; Dec. Dig. § 1194.*]

3. COURTS (§ 91*)—CONFLICTING DECISIONS—APPELLATE DIVISION AND COURT OF APPEALS.
    Where the Appellate Division disregarded the modification of an interlocutory judgment made by the Court of Appeals, so that its own opinion conflicted with that of the Court of Appeals, the opinion of the latter court controls.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325, 326; Dec. Dig. § 91.*]

4. MONEY RECEIVED (§ 18*)—ACTIONS—SUFFICIENCY OF EVIDENCE.
    Evidence in an action for money had and received *held* to show that defendant is equitably entitled to retain the money in his possession.
    [Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 70–72; Dec. Dig. § 18.*]

Action by George W. Seaward, as administrator with the will annexed of William Z. King, deceased, against Frederick H. Tasker. Verdict directed for plaintiff, and decision reserved on defendant's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

motion to set the verdict aside. Motion granted, and complaint dismissed.

Coombs & Wilson, of Brooklyn (Robert H. Wilson, of Brooklyn, of counsel), for plaintiff.

Baylis & Sanborn, of New York City (Frederick H. Sanborn, of New York City, of counsel), for defendant.

SCUDDER, J. Upon the trial the evidence introduced consisted chiefly of a judgment roll, the printed cases on various appeals, and other court records. It being impossible to examine these records upon the trial, the court directed a verdict for the plaintiff, and reserved its decision on the motion to set aside the verdict, in order that a thorough examination of the records might be made and the merits of the controversy determined. It was stipulated on the trial that if anything had not been admitted in evidence, which the court might regard as material, it might be admitted in evidence at any time. The court has found it necessary to examine the original record of the accounting proceeding of Mary E. King, as executrix of William Z. King, deceased, in the Surrogate's Court of Kings County, and the same will be regarded as admitted in evidence.

### Nature of the Action.

The action is in the nature of the common-law action of money had and received. The plaintiff, as administrator with the will annexed of William Z. King, deceased, seeks to recover from the defendant, an attorney at law, money which was paid to him for legal services by one Buell G. Davis, as executor of Mary E. King, deceased, upon the ground that Mary E. King left no estate, and that all the money and property in Davis' possession as executor in fact belonged, and had been adjudged to belong, to the estate of William Z. King.

[1] An action for money had and received is to be determined upon equitable principles. In order to recover, plaintiff must prove, not merely as a matter of technical law, but that in equity and good conscience, he is better entitled to the money than defendant. To establish his title, or rather his equitable right, to the money which was paid by Davis, the executor of Mary E. King, to Tasker, the defendant in this action, plaintiff relies solely upon the judgment roll in Seaward v. Davis, filed with the clerk of Kings county on April 4, 1911, and the affirmance of that judgment by the Appellate Division. See 148 App. Div. 805, 133 N. Y. Supp. 384.

An examination of the court records in that case has led me to the conclusion that I must disregard the judgment on which the plaintiff in this action relies, because the courts responsible for it seemingly have considered themselves bound by mere rules of practice to render a judgment contrary to what they have declared in their opinions to be the law, and thereby have perpetrated an injustice which shocks the conscience.

### Conflicting Constructions of William Z. King's Will.

What first led me to an examination of this judgment was the glaring difference between the construction which is placed on the will of William Z. King by the opinion of Chief Judge Cullen in Seaward v. Davis, 198 N. Y. 415, 91 N. E. 1107, and that which is placed thereon by the opinion of Mr. Justice Woodward, rendered later in the same case, reported in ·148 App. Div. 805, 133 N. Y. Supp. 384. Mr. Justice Woodward, in his opinion, after referring to the opinions previously rendered in the case by the Appellate Division (121 App. Div. 290, 105 N. Y. Supp. 672; 133 App. Div. 191, 117 N. Y. Supp. 468), and to the opinion of the Court of Appeals therein (198 N. Y. 415, 91 N. E. 1107), says:

"The effect of these adjudications is to make conclusive the judgment of this court as to the proper construction of the will of William Z. King, who gave his personal property to his wife for life, with power to use the principal 'for her own personal use,' and that she held such personal property 'as trustee for the remaindermen as to all that portion thereof which was not used by her during her lifetime for her own personal use,' and that the defendant, as administrator [sic], was liable to account for the acts of said wife as such trustee." 148 App. Div. at page 806, 133 N. Y. Supp. at page 384.

In rendering the opinion of the Court of Appeals, Chief Judge Cullen (198 N. Y. at pages 419, 420, 91 N. E. at page 1108) says:

"On the merits, we are of opinion that the will of William Z. King was properly construed by the Appellate Division on the first appeal in this case, Tuthill v. Davis, 121 App. Div. 290 [105 N. Y. Supp. 672]; that is to say, its effect was to give the widow a life estate, with the absolute power of disposition during her lifetime, with remainder over of such part as she might not dispose of to the persons named in the will. * * * It is doubtless true that ordinarily a life tenant in possession of personal property is a trustee to preserve the principal for the remaindermen to whom it may pass on his death. In this case, however, the widow had the right to dispose of the property in her lifetime, and as to such property as she did dispose of neither she nor her executor was bound to account to the remaindermen, because they had no interest in it."

Both of these opinions in their entirety will be considered hereafter. It is sufficient to state at this point that the several constructions placed upon the will of William Z. King by these opinions are so contradictory and irreconcilable that duty compelled me to examine the judgment on which the plaintiff relies in this action, to ascertain whether or not it has been obtained or rendered by wrong or grievous mistake. To determine this, the history of the litigation between the administrator c. t. a. of William Z. King and the executor of Mary E. King must be reviewed.

### Facts out of Which the Litigation Grew.

. William Z. King and Mary E. King in their lifetime were husband and wife. William Z. King died in February, 1899, leaving a will containing the following provision: ·

"Third. I give and bequeath' all my personal property of every name and kind to my wife, excepting my piano which I give to Lilly Corwin aforesaid.

"Whatever personal estate may remain at the decease of my wife I give and

bequeath to Buel Davis and Abagail Davis, the parents of my wife, or if they are not living then to my sisters aforesaid and Lilly Corwin share and share alike."

By the will the wife was appointed executrix, and she duly qualified as such. She employed as her attorneys in the settlement of her husband's estate the firm of Burr, Coombs & Wilson. The senior member of this firm, Mr. Joseph A. Burr, subsequently (1905) became a Justice of the Supreme Court, and ceased to be a member of the firm. These attorneys presented Mrs. King's account as executrix of her husband's estate to the Surrogate's Court of Kings County. In this account it is stated that she was sole legatee of her husband, and on May 18, 1900, a decree was obtained which in effect adjudges that she turn over all the personal property of the estate to herself as the absolute owner thereof.

Her account shows that the principal part of the estate of William Z. King consisted of an account of $1,000 in the Seaman's Savings Bank and 26 United States government bonds, of the aggregate face value of $14,000. She states in her account that she had not sold any of the personal property mentioned in the inventory of her husband's estate. The account, however, shows that she had sold two $1,000 United States government bonds and had turned over the proceeds to herself as sole legatee. It nowhere appears from the account itself whether or not she had transferred or appropriated to herself the $1,000 in the Seaman's Savings Bank. The decree settling this account adjudged, among other things, that she be permitted and allowed to sell the government bonds remaining unsold, of the face value of $12,000, or, if she so elected, to have the title to the said bonds transferred to her.

This account and decree, although rendered in an ex parte proceeding, constitute a formal declaration by Mary E. King of an intent to convert, dispose of, and appropriate the entire personal property of her husband's estate, so as to make it her own absolutely. This accounting does not, however, show the actual execution of such intent, except as to the $2,000 government bonds which the account shows she had already sold. It is to be borne in mind in this connection that, while this account was before the courts prior to the decision of the Court of Appeals in Seaward v. Davis, in May, 1910 (198 N. Y. 415, 91 N. E. 1107), Mary E. King's actual dealings with the property left by her husband subsequent to the account did not appear until shown by evidence introduced by Mr. Wilson in behalf of the plaintiff at the hearing before Grosvenor H. Backus, Esq., referee, in 1911.

The widow died in May, 1905, leaving a will disposing of all her personal property. Buell G. Davis, her brother, was appointed and qualified as her executor. He did not employ Messrs. Coombs & Wilson as his attorneys, but employed the defendant in this action, Frederick H. Tasker. The appointment of an administrator c. t. a. of the husband's estate was thereupon secured by the remaindermen named in the husband's will, and Coombs & Wilson became the attorneys for the administrator c. t. a. Soon after the probate of the

widow's will a written notice was served on her executor, Davis, and on his attorney, Tasker, the defendant in this action, to the effect that all of the property which Mary E. King had at the time of her death belonged to the estate of the husband, and demanding that it be turned over to his administrator c. t. a. The demand was refused.

### The Litigation.

An action was at once commenced to enforce this demand; the summons and complaint therein being served on September 30, 1905. The litigation thus commenced lasted about seven years, being heard three times at Special Term, three times in the Appellate Division, and once in the Court of Appeals. The defendant in this action was the attorney for the wife's executor throughout this long litigation, and Mr. Robert H. Wilson acted as counsel for the plaintiff therein. For his fees and disbursements in all this litigation, Tasker was paid by the wife's executor the sum of $2,071.12, an amount conceded on the trial to be entirely proper. To recover this sum is the object of the present action.

### Trial before Mr. Justice Marean.

The action against Davis, the wife's executor (sub nom. Tuthill v. Davis), was tried before Mr. Justice Marean on December 19, 1905, at Special Term for Trials, Kings County. He rendered a judgment dismissing the complaint on the merits. In his opinion he states, in effect, as the reason for his dismissal, that under the terms of the husband's will the gift to the wife of his personal property was absolute, and that therefore the subsequent gift over to the remaindermen was void, under the authority of Van Horne v. Campbell, 100 N. Y. 287, 3 N. E. 316, 771, 53 Am. Rep. 166.

### First Appeal to the Appellate Division.

Mr. Justice Marean's judgment was reversed by the Appellate Division in July, 1907. Tuthill v. Davis, 121 App. Div. 290, 105 N. Y. Supp. 672. Mr. Justice Miller, writing the opinion of this court, construing the husband's will, says:

"He [the husband] intended to give his wife the use of both the real and personal property during her life, with the beneficial power of disposition of the latter, remainder over to the persons named." 121 App. Div. at page 292, 105 N. Y. Supp. at page 673.

This is the gist of the opinion, and it is unnecessary to quote it further. In explanation of the language of Mr. Justice Miller above quoted, it may be appropriate to state that powers are divided into two classes—"beneficial powers," and "powers in trust." A beneficial power is one to be exercised for the benefit of the donee solely, and is unaccompanied by a trust. If such a power is unlimited, or, as often termed, "general," it is called an "absolute power of disposition." If any person other than the donee has an interest in the proceeds resulting from the execution of the power, it is termed "a power in trust."

It is clear that what Mr. Justice Miller meant by the phrase "beneficial power of disposition" was a power of disposition general as well as beneficial; that is, an absolute power of disposition. Chief Judge Cullen so understood it, as will subsequently appear.

## Trial before Mr. Justice Clark.

The new trial, directed by the Appellate Division reversing Mr. Justice Marean, was heard before Mr. Justice Clark. He handed down no opinion in deciding the case. The interlocutory judgment, dated July 10, 1908, which was entered on Mr. Justice Clark's decision, among other things adjudges as follows:

"I. That the will of said William Z. King, deceased, gave his personal property to his wife, Mary E. King, for life, with a power to use the principal for her own personal use."

"III. That the said Mary E. King held the said personal property so received by her from the estate of said William Z. King, deceased, as trustee for the remaindermen as to all that portion thereof which was not used by her during her lifetime for her own personal use."

These conclusions of Mr. Justice Clark are diametrically opposed to the construction given to the will of William Z. King by the Appellate Division in its opinion written by Mr. Justice Miller.

Under an unlimited beneficial power to dispose, which the Appellate Division held the wife to have under the will, her power of disposition was not limited to "her own personal use"; but she had the power of disposal for any purpose she pleased, whether for her own use or for the use of others. Under the Appellate Division's construction of the will, the power was not coupled with a trust in favor of the remaindermen, and the wife could dispose of her husband's personal property as she pleased in her lifetime, and, if she did so, the remaindermen would be cut off.

The interlocutory judgment further directed that the defendant, as the executor of Mrs. King, file an account of her acts with reference to the personal property received by her from her husband's estate, and that he charge himself therein with $17,268.50, the inventoried value of the husband's estate, together with interest, and upon failure to file said account that final judgment follow.

## Executor Davis' Account.

After delay, the defendant Davis filed an account wherein he stated that, as far as he had been able to ascertain with due diligence, Mary E. King kept no account of the funds and property which she received from her husband's estate, and set forth the inventory thereof as filed, which showed assets consisting principally of $300 cash, $1,000 on deposit in the Seaman's Savings Bank, and 26 government bonds of the appraised value of $15,820.

Thereupon the plaintiff moved at Special Term before Mr. Justice Blackmar for final judgment on the ground that Davis, the defendant, had not obeyed the interlocutory judgment, in that he had not charged himself with said $17,268.50. The court directed final judgment against him for said amount.

## Second Appeal to the Appellate Division.

An appeal was taken to the Appellate Division from the interlocutory and final judgment. This appeal was decided in June, 1909. Seaward v. Davis, 133 App. Div. 191, 117 N. Y. Supp. 468. The interlocutory judgment was modified, by striking therefrom the provision charging the defendant executor with the sum of $17,268.50, and, as modified, was affirmed. The final judgment was reversed. In thus disposing of the appeal, the Appellate Division did not order a new trial, or direct that the accounting proceed before the referee appointed by Mr. Justice Clark. Mr. Justice Jenks wrote the opinion of the court. Mr. Justice Burr voted to affirm both the interlocutory and the final judgment appealed from without any modification, writing a dissenting opinion in support of his position.

In order to emphasize the clear and explicit language employed by Chief Judge Cullen in writing the opinion of the Court of Appeals (198 N. Y. 415, 91 N. E. 1107), on the subsequent appeal to it from the determination of the Appellate Division, the opinion of Mr. Justice Jenks, and the dissenting opinion of Mr. Justice Burr, will here be contrasted in respect to what is said in each in reference to the construction of the will of William Z. King, and the theory on which the wife's executor should be held to account.

Mr. Justice Jenks says:

"King's will, as construed by us in Tuthill v. Davis, 121 App. Div. 290 [105 N. Y. Supp. 672], gave to his wife the use of both the real and personal property during her life, with the beneficial power of disposition of the latter, remainder to certain specified persons. * * * She personally came into possession of $17,268.50 in chattels, money, and bonds. * * * Mrs. King did not take this personal estate as a corpus to be preserved by her as trustee for the remaindermen. She was not limited by the terms of the will in the use or consumption or disposition thereof during her life. She was regarded as a trustee or quasi trustee as to any remainder which she had not used, consumed, or disposed of during her life." 133 App. Div. at page 192, 117 N. Y. Supp. at page 469.

From the language employed by Mr. Justice Jenks there can be no doubt that he holds that the will gave Mrs. King an absolute power of disposition of the personal property of her husband in her lifetime. The Appellate Division, however, neglected to direct a modification of the interlocutory judgment of Mr. Justice Clark, so that it might conform to the views of the court, and, though Mr. Justice Jenks states in the latter part of his opinion that there should be an accounting, the formal order of modification of the interlocutory judgment made by the Appellate Division does not so provide.

Mr. Justice Burr in his dissenting opinion says:

"Her [Mrs. King's] power of disposition was not absolute, so as to make her the complete owner of the property; but such power of disposition was limited to that which was necessary for her own benefit." 133 App. Div. at page 195, 117 N. Y. Supp. at page 471.

Upon an accounting, under the construction placed upon the will by Mr. Justice Burr, holding that Mrs. King did not have an absolute power of disposition, but only a limited power of disposition for her personal use, her executor would be entitled to credit for such sums

only as were properly expended by her out of the principal received, either for purposes of. administration of William Z. King's estate or for her own use (see dissenting opinion, 133 App. Div. at bottom of page 197, 117 N. Y. Supp. 468); whereas, under an accounting under the construction placed upon the will by Mr. Justice Jenks, that she had an absolute power of disposition, her executor would be credited, not only with what she personally used and consumed, but also with what she had disposed of in any manner in the execution of her absolute power. If any of the property had been so disposed of by her, it would thereby be taken out of the corpus of the estate for which she was otherwise accountable to the remaindermen, and, although derived from her husband's estate, the proceeds thereof would be hers absolutely. It is needless to say that the result of accountings under these different theories would be entirely different.

The portions of Mr. Justice Jenks' opinion which have not been quoted herein have not been overlooked. They seem somewhat confused, and their meaning in some respects is not plain to me. This confusion evidently arises from the fact that the court had not been informed as to how Mrs. King had actually dealt with her husband's estate, and, in the manner in which the case was presented to it, her dealings therewith were left wholly to conjecture.

Since the Court of Appeals, on the subsequent appeal to it, holds that the will of William Z. King was properly construed by the Appellate Division on the first appeal thereto (121 App. Div. 290, 105 N. Y. Supp. 672), and makes no mention of the second appeal, in which the opinion of Mr. Justice Jenks was written (198 N. Y. at page 419, 91 N. E. 1107), a further analysis of his opinion is unnecessary.

### Appeal to the Court of Appeals.

The plaintiff obtained permission from the Appellate Division to appeal to the Court of Appeals from the former court's order modifying the interlocutory judgment of Mr. Justice Clark, and reversing the final judgment entered thereon, on the following certified questions:

"First. Did the trust upon which the defendant's testatrix received the personal property from her husband's estate attach in the first instance to the whole of said property immediately upon its receipt by her, subject to be terminated during her lifetime as to the whole or such portion thereof as she used for her own benefit?

"Second. Should the defendant be charged in the first instance in his account with the amount of personal property which it was proved was received by his testatrix from her husband's estate?

"Third. Did proof of the amount of the personalty paid over and received by the defendant's testatrix under the will of her husband justify the direction of a final judgment for such amount against this defendant, after the interlocutory judgment and the proceedings subsequent thereto?"

These questions involve the assumption that the construction placed on the will of Mr. King by the interlocutory judgment of Mr. Justice Clark, and by the dissenting opinion of Mr. Justice Burr, is the proper construction. Chief Judge Cullen, writing the opinion of the Court of Appeals (198 N. Y. 415, 91 N. E. 1107), refuses to be limited by

these questions in the determination of the meaning of the will, and, sweeps them aside. He says at page 419 of 198 N. Y., and page 1108 of 91 N. E.:

"The Appellate Division, by permitting an appeal and certifying questions, could not limit the right of the defendant to sustain the modification on any ground, or limit the power of this court to review the whole case."

The real questions presented for the determination of the Court of Appeals on the merits were:

(1) Did the will of Mr. King give his wife an absolute power of disposition of his personal property in her lifetime, as held by Mr. Justice Miller, and should there be an accounting by the wife's executor in accordance with such construction of the will? Or

(2) Did his will give the wife only a power which was limited to that which was necessary for her own benefit or use, as contended by Justices Clark and Burr, and should there be an accounting in accordance with these justices' construction of the will?

The first of these questions the opinion of Chief Judge Cullen in effect answers in the affirmative, and the second must therefore be considered as answered in the negative. As to the construction of the will he says:

"On the merits, we are of opinion that the will of William Z. King was properly construed by the Appellate Division on the first appeal in this case, Tuthill v. Davis, 121 App. Div. 290 [105 N. Y. Supp. 672]; that is to say, its effect was to give the widow a life estate, with the absolute power of disposition during her lifetime, with the remainder over of such part as she might not dispose of to the persons named in the will. Terry v. Wiggins, 47 N. Y. 512; Crozier v. Bray, 120 N. Y. 366 [24 N. E. 712]; Leggett v. Firth, 132 N. Y. 7 [29 N. E. 950]." 198 N. Y. at pages 419, 420, 91 N. E. at page 1108.

There can be no question but that Chief Judge Cullen uses the words "absolute power of disposition" in accordance with their strict technical meaning. Each of the cases cited by him refers to such a power. He states that in the case of Leggett v. Firth, where there was a gift of an absolute power of disposition, the gift was "similar" to that to Mrs. King, and in the case of Swarthout v. Ranier, 143 N. Y. 499, 38 N. E. 726, where the gift to the wife was "to have and to hold for her comfort and support," the gift was of a "more limited character" than that to Mrs. King.

The following quotations from the opinion of Chief Judge Cullen apply to the liability of Mrs. King's executor to account to the remaindermen:

"But the fact that the widow's estate was for life only did not authorize the Special Term to charge the defendant with the whole property she had, received from her husband's estate, in the face of his statement that he could not find any part of that estate in his hands. It is doubtless true that ordinarily a life tenant in possession of personal property is a trustee to preserve the principal for the remaindermen, to whom it may pass on his death. In this case, however, the widow had the right to dispose of the property in her lifetime, and as to such property as she did dispose of neither she nor her executor was bound to account to the remaindermen, because they had no interest in it. If none of the husband's property remained at the time of the widow's death, or could be found at that time, as stated by the defendant, it is evident that the widow had disposed of it." 198 N. Y. at page 420, 91 N. E. at page 1108.

Chief Judge Cullen further says, in referring to the defendant's liability to account:

"We are therefore of opinion that the burden rested on the plaintiff to show that some part of the husband's estate passed to the defendant or was in his possession. * * *" 198 N. Y. at pages 420, 421, 91 N. E. at page 1108.

The latter part of Chief Judge Cullen's opinion is based entirely on an assumed or speculative state of facts with respect to the dealings of Mrs. King with the estate of her husband. The record before the Court of Appeals contained no evidence of her actual dealings therewith, other than is shown by her account as executrix. Of this portion of the opinion it is necessary to quote only the following:

"It does not follow, however, that the plaintiff is not entitled under any state of facts to recover, or that he is necessarily precluded by the account filed by the defendant. On the accounting he may be able to show that the widow left a substantial estate. Almost the whole of the husband's estate was represented by government bonds and a deposit in a savings bank. The bonds matured and were paid. It is possible that these moneys might be traced into property which the widow left at her decease. Even if it were not possible to so trace this fund, if the widow left securities or property which did not proceed from other sources, a presumption might arise that they represented a part of the husband's estate. We do not decide this question, for the record does not show what estate the widow left, nor its condition." 198 N. Y. at page 421, 91 N. E. at page 1109.

The last sentence in the above quotation makes all that is said therein merely dicta. It cannot, therefore, be construed as modifying in any respect anything that the court directly held in the previous part of its opinion. These dicta are easily reconciled with what was said. The only material fact assumed in the dicta is that the government bonds matured and were paid in during the life of Mrs. King. If this were the fact, such payment would not be the act of Mrs. King, and it could not, therefore, be regarded as an execution of her absolute power of disposition.

But this was not the fact. The bonds had not matured. Chief Judge Cullen was probably misled into making the statement that they had become due and were paid by the natural inference which could be drawn from the following statements contained in the brief of Mr. Robert H. Wilson, who argued the case before the Court of Appeals in behalf of the plaintiff appellant. Mr. Wilson says (at page 3 of his brief):

"After the death of her husband, and after receiving this personal property, the widow, Mary E. King, lived for five years in the little village of Greenport, Long Island, in the home of her adopted daughter, Lilly Corwin. During this five years the government bonds which she received from her husband's estate matured. Less than two months prior to her death, the widow, Mary E. King, made her will, by which she bequeathed in cash $14,000."

Mr. Wilson nowhere mentions in his brief the fact that soon after the death of her husband Mrs. King employed as her lawyers the firm of Messrs. Burr, Coombs & Wilson. and, acting under their direction, converted and disposed of all her husband's assets, including the government bonds. with the intent and purpose of making them her own absolutely. Did Mr. Wilson know how the bonds had been disposed

of by Mrs. King? And did he intend to mislead the Court of Appeals as to their disposition by Mrs. King by the statements in his brief?

The final paragraph of the opinion of Chief Judge Cullen, setting forth the court's conclusion as to the disposition of the case, reads as follows:

"The judgment of the Appellate Division should be modified, by directing that the accounting under the interlocutory judgment, as modified, proceed, and in other respects affirmed, without costs in this court to either party."

This paragraph is a part of the opinion, and should be construed in connection therewith. It perhaps might have been made verbally clearer if it had been made to read as follows:

"The judgment of the Appellate Division should be modified, by directing that the accounting under the interlocutory judgment, as modified *by the Appellate Division and this opinion*, proceed, and in other respects affirmed, without costs in this court to either party."

To insist that, because of the absence of the underlined words, the Court of Appeals must be regarded as directing judgment affirming the construction placed on Mr. King's will by the interlocutory judgment of Mr. Justice Clark, notwithstanding it had declared by its opinion that a different construction was proper and right, would exaggerate a mere verbal, or possibly a clerical, mistake into an intentional rendering of a judgment contrary to what the Court of Appeals decided. See Fischer v. Blank, 138 N. Y. 669, at pages 671 and 672, 34 N. E. 397.

### Accounting before Referee Backus.

In 1911. after the decision of the Court of Appeals, an accounting was had before Grosvenor H. Backus, Esq., referee, pursuant to the interlocutory judgment of Mr. Justice Clark. Upon the hearing before the referee, from evidence produced wholly by Mr. Robert H. Wilson, counsel for plaintiff, the actual dealings of Mrs. King in 1900 with her husband's estate were disclosed for the first time after seven years of litigation. If this evidence had been introduced at the original trial of this action before Mr. Justice Marean in 1905, a speedy determination in favor of the defendant would have resulted. In course of the trial before Mr. Justice Marean, he said:

"I will send it [the case] to a reference, to find what the property is, and whether the conversion of this property wiped out the remainder." See record on appeal, Tuthill v. Davis, page 46, folio 181.

A frank statement at this time by the plaintiff's counsel of these facts of Mrs. King's dealings with her husband's estate. which occurred before and shortly after her accounting as executrix, would have removed from the case all speculation and conjecture.

### Mrs. King's Disposal of Her Husband's Estate.

The full story, as it appears from the evidence taken before the said referee and the records before this court, is as follows: Soon after the death of her husband, Mrs. King took his will to Messrs. Burr, Coombs & Wilson for legal assistance and direction in its probate, and in the performance of her duties as executrix. From a number of

facts appearing in the surrogate's records,. it may be fairly inferred that Mr. Joseph A. Burr, the senior member of the firm, took personal charge of her matters. These attorneys, after they had procured the probate of the will, presented Mrs. King's account as executrix to the Surrogate's· Court of Kings County, in which it was stated that she was the sole legatee of her husband's personal property. There are indications in the evidence taken before the referee that Messrs. Burr, Coombs & Wilson continued to act as the attorneys of Mrs. King until May, 1901. The date of the decree settling her account as executrix is May 18, 1900. Before the date of this decree she had converted or disposed of the following assets of her husband's estate: July 3, 1899, Mr. King's $1,000 account in the Seaman's Savings Bank was closed, and the proceeds deposited in the Williamsburgh Savings Bank in Mrs. King's own name. On February 7, 1900, $2,000 of United States government bonds were sold, and the proceeds deposited in several savings banks in Mrs. King's own name. On May 29, 1900, 11 days after the date of the decree settling her account, the remaining $12,000 of United States government bonds were assigned to Mrs. King, and in lieu thereof new bonds were issued to her in her own name.

Thus, within 11 days after the decree settling her accounts, Mrs. King had converted and disposed of all the assets of her husband's estate. In doing what she did, Mrs. King acted as a prudent person would. She sought the advice of reputable lawyers, and was justified in relying on their advice. As a matter of fact they advised her properly, if she had, as the courts subsequently held her to have, an absolute power of disposition under her husband's will. That these attorneys believed that what Mrs. King did under their direction had made the property and proceeds derived from the conversion of her husband's assets her absolute property is evidenced by the fact that Mr: Burr drew a will for Mrs. King in May, 1901.

After Mrs. King had converted the assets of her husband's estate as above narrated, she proceeded to deal with the proceeds as though they were her own, and as though the remaindermen named in her husband's will had no interest in them. She kept no books of account. She sold all of the new government bonds which she had taken out in her own name, and deposited the proceeds in various savings banks. She withdrew from time to time money from one or another of these savings banks, and therewith in some instances opened accounts in other savings banks, on some occasions loaned on bond and mortgage the money withdrawn, and used other withdrawals of money to purchase jewelry, etc. At the time of her death her assets consisted of savings banks accounts, bonds and mortgages, and jewelry. She died, leaving a will bequeathing all her property to her relatives and friends.

Past question, both by intent and act, Mrs. King had converted and disposed of all the assets left by her husband. All these facts appear in the evidence, which was introduced by plaintiff before Mr. Backus, referee, and was uncontradicted. This evidence establishes that Mrs. King in her lifetime executed the absolute power of dis-

position given her by her husband's will, that the property which she left at her death passed under her will, and that her executor was entitled to it.

### Referee Backus' Conclusions.

Notwithstanding the Court of Appeals had decided that Mrs. King had an absolute power of disposition during her lifetime, the referee in his report wholly ignored that court's determination, and found that her right to dispose of the assets which she received from her husband's estate was limited to "her own personal use." Based on this erroneous finding, the referee further found that Mrs. King did not dispose of all of the estate of her husband in her lifetime, and that substantially all of the assets of Mrs. King at the time of her death, consisting of money and property amounting to $15,861.92, and certain jewelry, all of which were in the possession of her executor, belonged to the estate of her husband.

### Mr. Justice Crane's Judgment.

On motion of plaintiff, Mr. Justice Crane signed a judgment confirming the referee's report and directing the wife's executor to turn over the assets mentioned in the referee's report to the husband's administrator c. t. a. The judgment of Mr. Justice Crane recites as follows:

"An interlocutory judgment having been made and entered in this action on July 11, 1908, providing that the will of William Z. King, deceased, gave his personal property to his wife, Mary E. King, for life, with the power to use the principal for her own personal use, and that the said Mary E. King did not, during her lifetime, use up all of the principal of said personal property, and that the said Mary E. King held the said personal property, so received by her from the estate of the said William Z. King, deceased, as trustee for the remaindermen as to all that portion thereof which was not used by her during her lifetime for her own personal use, and that the defendant was liable to account to the plaintiff for the acts of said Mary E. King as trustee of said personal property. * * *"

From this recital it appears that this judgment is based solely on the interlocutory judgment of Mr. Justice Clark, and ignores the modifications thereof by the Appellate Division and by the Court of Appeals.

The attorney for Mrs. King's executor plainly proceeded upon a mistaken theory of the law throughout this long litigation which we have been discussing, which was that, the Surrogate's Court having settled the accounts of Mary E. King as executrix, the Supreme Court had no jurisdiction of the action brought against Davis, the executor of Mrs. King. The points contained in his briefs on the various appeals are substantially ignored by the appellate courts in their opinions, nor does he in his briefs make any claim that Mrs. King had an absolute power of disposition. What he did not do for his client in this respect, however, the appellate courts very properly did for him on their own initiative in furtherance of justice.

The fact that the attorney for Mrs. King's executor gave to the referee and to Mr. Justice Crane no aid in reaching a determination in the case may be the reason for their failure to follow the deter-

minations of the appellate courts, which had laid down the rule for the proper construction of Mr. King's will, and had prescribed the nature of the accounting which was to be had under such construction. Neither the referee nor Mr. Justice Crane wrote an opinion. Their reason for disregarding the determination of the Court of Appeals, and the prior determinations of the Appellate Division, is therefore left to conjecture. What is known, however, is the fact that, by the overlooking of the determinations of the appellate courts, a miscarriage of justice has resulted. With what effect?

After six years of litigation, a judgment is rendered for plaintiff, notwithstanding that under the law of the case as laid down by the Court of Appeals, and by the undisputed facts, it was the defendant who was entitled to the judgment, and not the plaintiff. Such a judgment obviously requires defense or explanation. No explanation or defense thereof is given, unless the opinion of the Appellate Division, affirming this judgment, on the subsequent appeal to it by the defendant, may be so considered.

### Third Appeal to the Appellate Division.

The explanation or defense of this judgment given in the opinion of the Appellate Division (148 App. Div. 805, 133 N. Y. Supp. 384) is obviously untenable. It is based on the erroneous assumption that the direction for judgment at the end of the Court of Appeals opinion, to wit:

"The judgment of the Appellate Division should be modified, by directing that the accounting under the interlocutory judgment, as modified, proceed, and in other respects affirmed * * *" (198 N. Y. 421, 91 N. E. 1109)

—must be construed as overruling what the Court of Appeals clearly had held to be the meaning of Mr. King's will, and as affirming the construction placed on that will by Mr. Justice Clark's judgment, which was in conflict with the Court of Appeals' construction of the will. A forced construction, by which one portion of the opinion of the Court of Appeals is made to nullify another portion, is the foundation of this decision of the Appellate Division. After referring to the former appeals to it (Tuthill v. Davis, 121 App. Div. 290, 105 N. Y. Supp. 672; Seaward v. Davis, 133 App. Div. 191, 117 N. Y. Supp. 468), the Appellate Division says:

"The case went to the Court of Appeals (198 N. Y. 415 [91 N. E. 1107]) where the judgment was modified by directing that the accounting under the interlocutory judgment, as modified *by this court*, should proceed." 148 App. Div. at page 806, 133 N. Y. Supp. at page 384.

In this the opinion of the Appellate Division follows the language of the direction of the Court of Appeals, except that the Appellate Division interpolates the words underscored. It thus appears that the Appellate Division considers it permissible to depart from the strict wording of the direction of the Court of Appeals to the extent of interpolating the words "by this court," yet it considers it not permissible to interpolate the additional words "and the opinion of the Court of Appeals," the insertion of which last words would harmonize the direction of the Court of Appeals with the other parts of its opinion.

The opinion of the Appellate Division proceeds:

"The effect of these adjudications (121 App. Div. 290 [105 N. Y. Supp. 672]; 133 App. Div. 191 [117 N. Y. Supp. 468]; 198 N. Y. 415 [91 N. E. 1107]) is to make conclusive the judgment of this court as to the proper construction of the will of William Z. King, who gave his personal property to his wife for life, with power to use the principal 'for her own personal use,' and that she held such personal property 'as trustee for the remaindermen as to all that portion thereof which was not used by her during her lifetime for her own personal use,' and that the defendant as administrator [sic] was liable to account for the acts of said wife as such trustee." 148 App. Div. at page 806, 133 N. Y. Supp. at page 384.

The implication here is that the direction for judgment at the end of the opinion of the Court of Appeals, because it did not in words refer back to what preceded it, justified the Appellate Division in ignoring the construction placed on the will in the body of the Court of Appeals' opinion, which held that the widow was given the absolute power of disposition during her lifetime, with remainder over of such part as she might not dispose of.

It is inconceivable that the Appellate Division intended to assert that what it says in the above quotation is in harmony with what it had held in its opinions on the earlier appeals in this case, and in harmony with what had been held in the body of the opinion of the Court of Appeals, because such assertion is refuted by the plain language of the opinions. These opinions clearly hold, as we have already seen, that the widow had an absolute power of disposition. No opinion of any court, before which the case has been, supports this last utterance of the Appellate Division. It finds its only support in the dissenting opinion of Mr. Justice Burr on the second appeal to the Appellate Division, wherein he contends that Mrs. King's power of disposition "was not absolute," but "limited." 133 App. Div. 191 at page 195, 117 N. Y. Supp. 468 at page 471.

In the opinion we are considering now the Appellate Division further says. referring to defendant's appeal from the interlocutory judgment:

"We know of no rule of law by which the interlocutory judgment, which has been affirmed by this court and by the Court of Appeals, can be again reviewed. Code Civ. Proc. §§ 1316, 1350; Rich v. Manhattan R. Co., 150 N. Y. 542 [44 N. E. 1097]" 148 App. Div. at page 807, 133 N. Y. Supp. at page 385.

This is equivalent to saying (conceding there is a conflict between the opinion of the Court of Appeals and its direction for judgment, which I do not find) that the Appellate Division is compelled under certain provisions of the law regulating practice to follow its interpretation of the direction of the Court of Appeals in rendering judgment, although this direction is out of harmony with what that court holds in the body of its opinion, even though injustice result. See, to the contrary, Hasell v. Buckley, 118 App. Div. 356, at page 358, 103 N. Y. Supp. 377. In other words, that a point in procedure may be reached at which the powers of the Appellate Division, as an appellate court to correct mistakes and to do justice, ceases.

It is finally stated in this opinion of the Appellate Division:

"We have examined with care the financial statement prepared by the appellant, with a view to showing that the learned referee had erred in charging the defendant with the amount above mentioned; but it is very clear to us that the counsel has overlooked the very important fact that the estate of William Z. King was so invested that it yielded an income of something over $700 per year, and that the estate left by Mrs. King appears to have been substantially the same as that which was left by her husband. It was shown that she had no other property and no other source of income, and we are of the opinion that the accounting is entirely in harmony with the suggestions made by the Court of Appeals, and that there is no reason for this court to interfere with the judgment as rendered." 148 App. Div. at page 807, 133 N. Y. Supp. at page 385.

The phraseology of this statement shows that it refers to the latter part of the opinion of Chief Judge Cullen, previously quoted, which concludes with these words:

"We do not decide this question, for the record does not show what estate the widow left, nor its condition." 198 N. Y. at page 421, 91 N. E. at page 1109.

Assuming, again, that this dictum is in conflict with what the Court of Appeals held in the earlier part of its opinion, this statement of the Appellate Division is equivalent to asserting the following:

"Although the accounting is at discord with what the Court of Appeals held to be proper, it is entirely in harmony with what the Court of Appeals says it does not undertake to decide; therefore there is no reason for the Appellate Division to interfere· with the judgment enforcing the result of such an accounting."

This opinion of the Appellate Division perpetuates injustice.

The Injustice.

Buell G. Davis, after defending a litigation for seven years, during which time the appellate courts three times determined that Mrs. King, his testatrix, had an absolute power of disposition of her husband's personal property left to her under his will, and after it had been established toward the end of the litigation by undisputed evidence, readily produced by the counsel for the plaintiff, Mr. Robert H. Wilson, that Mrs. King in her lifetime, acting under the advice of a firm of lawyers to which Mr. Wilson belonged, had executed her absolute power of disposition as to all of the personal property which she received from her husband's estate, and thereby had made it her own, and notwithstanding that, by reason thereof, under the decisions of the appellate courts, her executor, Buell G. Davis, was entitled to judgment in his favor, a judgment was rendered against him for an amount which, increased by interest, charges, and costs, was greater than the amount of money which Mrs. King had left and which had come into his hands; then, after turning over to the plaintiff all the property belonging to Mrs. King's estate which he had, Davis was imprisoned in contempt proceedings for the nonpayment of the balance of the judgment. Davis remained in prison several months, was purged of contempt, and was discharged on proof of ill health, but only upon payment by him of his last few dollars.

The result is that, under a judgment of the courts of this state,

money to which Buell G. Davis, as executor, was entitled, was taken from him and given to the plaintiff, to whom it did not belong. He was deprived of his liberty, was cast into prison, and was discharged therefrom broken in health, stripped of his last cent, and injured in reputation. And the Appellate Division in its opinion finds no other authority to justify its approval of this injustice than the provisions of sections 1316 and 1350 of the Code of Civil Procedure relating to practice on appeals.

## Conclusions.

Of course, under ordinary conditions, an interlocutory judgment, which has been affirmed without qualifications by the Court of Appeals, establishes the law respecting the final judgment.

[2] Where, however, as in the case we have been considering, the interlocutory judgment is affirmed "as modified," and it clearly appears from the opinion delivered on such affirmance that the Court of Appeals holds the law to be different in some respects from the law laid down by the interlocutory judgment, such judgment must be deemed modified to accord with the opinion of the Court of Appeals.

[3] The Appellate Division, in the action against Davis, having disregarded the modifications of the interlocutory judgment made by the Court of Appeals, and having raised a conflict between its own opinion and that of the Court of Appeals in the same case, the decision of the higher court is controlling.

It is therefore held:

That the interlocutory judgment in Seaward v. Davis was modified by the Court of Appeals in accordance with its opinion, and, as thus modified, it establishes the law respecting the final judgment.

That the trial court, in rendering final judgment in that action, and the Appellate Division in affirming such judgment, disregarded the law of the case as laid down by the Court of Appeals.

That, under the law of the case as thus laid down, the defendant, Davis, and not the plaintiff, Seaward, was entitled to final judgment.

That, there being a conflict between the decision of the Court of Appeals and the decision of the Appellate Division in the same action, the decision of the Court of Appeals is controlling.

[4] That in the case before me for determination, which is an action for money had and received, the burden which was on the plaintiff to establish that the defendant held money which in equity and good conscience belonged to the plaintiff is not sustained by the judgment on which plaintiff relies.

That, on the contrary, in the light of the special facts disclosed in the proof, it clearly appears that the defendant is entitled in equity to retain the money for the recovery of which this action is brought.

Motion to set aside the verdict herein is granted, and the complaint is dismissed on the merits. Settle order on notice.

NOTE.—In view of what is held in the foregoing opinion, it is suggested that the defendant, Davis, in Seaward v. Davis, lay the matter before the Court of Appeals through an application to amend its remittitur therein.