JAMES A. CURTIS AND GEORGE H. OUTHOUSE v. LUTHER T. WILCOX.

[See 49 Mich. 425.]

*Transfer of cause—Disqualification of circuit judge—Certiorari to circuit court commissioner.*

1. On *certiorari* to a circuit court commissioner to review proceedings for the transfer of a suit, in the absence of any real conflict in the testimony, the court will apply the law to the testimony without regard to the finding of the commissioner, which must be considered a finding of *law*, and not of *fact*. *Fellows v. Canney*, 75 Mich. 445.

2. In this case it is held that the testimony of the circuit judge fully meets the requirements of the statute, and shows his disqualification to sit, on account of his having been counseled regarding the subject-matter of the suit. See opinion for testimony.

*Certiorari* to a circuit court commissioner of Kent county to review proceedings to transfer suit. Submitted on briefs January 31, 1889. Order of commissioner vacated February 8, 1889, and one entered transferring cause. The facts are stated in the opinion.

*Howell, Carr & Barnard*, for defendant and petitioner.

*O. F. Bean* (*John C. Fitz Gerald*, of counsel), for plaintiffs.

MORSE, J. This case was originally commenced in the circuit court for the county of St. Joseph. It was tried three times in that county, coming once into this Court. 49 Mich. 425 (13 N. W. Rep. 803).

July 10, 1886, it was transferred to the Kent county circuit court, for the reason that Hon. Russell R. Pealer, who was then judge of the St. Joseph circuit, had been

consulted as to the subject-matter of the suit. In the Kent circuit it was continued from time to time until September, 1888, when Judge Montgomery resigned, and the Hon. William E. Grove was appointed as circuit judge in his stead. At the general election in November, 1888, Judge Grove was elected by the people of the circuit, and is now judge thereof.

September 19, 1888, the defendant presented a petition in writing, and on oath, under the provisions of How. Stat. §§ 6495 to and including 6499, to Everett D. Comstock, one of the circuit court commissioners of Kent county, setting forth, among other things, the nature of the action, its pendency in the Kent circuit, and that the said circuit judge, Hon. William E. Grove, had been consulted as to the subject-matter to be litigated in said suit, by George H. Outhouse, one of the plaintiffs, and that he had been employed also by said Outhouse as counsel in reference thereto. Hearing was had on this petition, and evidence introduced by the parties in support of, and in opposition to, the prayer of the petition, which was that the cause be transferred to St. Joseph county. September 20, 1888, the commissioner made an order denying the prayer of the petitioner, and refusing to transfer the cause. The case comes into this Court by writ of *certiorari*. The defendant asks that the order of the commissioner may be vacated and set aside, and an order entered in this Court transferring said cause to the St. Joseph circuit. Upon the hearing, before the commissioner, it was shown beyond dispute that the defendant and most of his witnesses reside in the county of St. Joseph, as does also his managing attorney of record, Newton H. Barnard, of the firm of Howell, Carr & Barnard; and that the Hon. Noah P. Loveridge, the present judge of the St. Joseph circuit, is in no way disqualified to try said cause.

The only question of fact controverted was whether or not the Kent circuit judge was disqualified under the statute from hearing the cause. The disqualification of the statute applies when the judge—

"Has been consulted or employed as counsel in the subject-matter to be litigated in said suit." How. Stat. § 6495.

It is argued by the counsel for the plaintiffs that, this question of fact having been passed upon and decided by the commissioner against the defendants, this Court has no power to review his finding of fact upon the weight of evidence; that his decision must therefore be considered as final and conclusive; and that the statute also requires that he must be "satisfied," before he can make the order of transfer (How. Stat. § 6498); that when there is any conflict of evidence it is for the commissioner, and for him alone, to pass upon it, and to weigh its sufficiency, or to decide to whose testimony he will give credence in the determination of the matter.

This claim may be admitted to be true, but, if there is no real conflict in the testimony, we have a right to apply the law to that testimony without regard to the finding of the commissioner; for, no matter how he may construe the testimony, his finding must be considered as a finding of law, and not of fact, because he applies the law to the testimony as it stands upon the record establishing undisputed facts. For instance, in this case the whole matter rests upon the testimony of the Kent circuit judge as to his participation in this case, or his dealings as an attorney with the subject-matter of it. The commissioner finds that his testimony does not bring the case within the statute. We look over the same testimony, and we may find that it does bring him within the statute. This is not a question of fact upon which we differ, but one of law. The testimony

of the judge reads the same in both courts, but the question whether the statute touches the case—whether the testimony brings the judge within the statute—is one of law, and not of fact.

The testimony on the part of the defendant, if undisputed, would have made a case under the statute; but we do not consider it necessary to refer to it. We think the case can well be disposed of upon the testimony of the circuit judge.

Judge Grove testified that he remembered writing a letter to the defendant's attorneys at the request of the plaintiff Outhouse, in reference to a case pending between him and the defendant, Wilcox. He further said:

"I never was employed in this case nor in any matter or issue in the case. I understand what the issue is. I have never been employed in that case. I don't consider that I have ever been consulted in reference to the subject-matter to be litigated in that case. I think Mr. Outhouse voluntarily told me and undertook to state to me the facts about it, at one time when he was in my office in reference to other suits, which I have for him and his wife, in which I was their counsel. This conversation of his to me was purely voluntary on his part, and I don't think I gave him any opinion. I either wrote a letter over my own signature, or wrote one for Mr. Outhouse to sign; I can't say which. Mr. Outhouse had some idea of getting a settlement of the case, and I told him I could not have anything to do with it. I told him I couldn't interfere in any case in which Curtis and Outhouse had other counsel, and he fully understood it; and I advised him strongly not to make any attempt to settle the case further than a compromise in his own behalf. My recollection of the letter is that it merely stated to Mr. Barnard's firm—it went this way—that Mr. Outhouse would like to see him and have an interview.

"I think that Mr. Barnard is wholly mistaken that I stated in my letter that I had been employed or was acting as counsel in that case. I have no recollection of stating any amount. I have a distinct recollection of wanting the whole business to be done with Mr. Outhouse, and therefore suggested that the attorney call on him if

he came here. I have a distinct recollection also of declining to meddle with the case in which other counsel were engaged. I informed Mr. Outhouse of his right to compromise as to his individual interest in the claim under the statute, and I told him it wouldn't be right or proper to go beyond that. That letter was written shortly before Mr. Barnard's visit to my office, and he told me he had seen Mr. Outhouse, pursuant to the suggestion of the letter. I don't think Mr. Barnard and myself had a very satisfactory interview towards reaching any result. I think I told Mr. Barnard at that interview, in substance, that I had no idea of anything being done further than a compromise between these parties and Mr. Outhouse as to Mr. Outhouse's individual interest.

\* \* \* \* \* \* \* \* \* \* \*

"*Q.* As I understand you, you were asked by Mr. Outhouse to be employed in this case, and you declined to be employed?

"*A.* No; not just that. Outhouse had an idea that he would like to see one of the attorneys for the defendant, and I rather think I inferred from what he said—I don't know that he said so—that he could make a settlement on his own hook. I had an idea that something like that was on his mind, and I advised him against it. I told him he had a right to sell his whole interest in the matter; that the statute provided it; but to settle it through his attorney."

The cross-examination of said witness by Mr. Uhl and Mr. Barnard is as follows:

"I told Mr. Barnard I should not like to sit in this case as the trial judge now, as there was a feeling manifest that they had a little rather I wouldn't. I told him that if it remained here I should shove it on before Judge Judkins, as he was coming here next week, and it was one of the first cases on the docket. When Outhouse talked it over with me, I think he went over pretty fully what the case was about. I don't remember more than once, but I think very likely he did, and I know he went over it very fully once. He used to come and sit in the office after he got sick with the rheumatism. I think that I had never met Mr. Barnard till he came in the office. I think he gave me his card. He said Mr. Outhouse told him to come to me. Then I and Mr. Barnard

had some conference, not about the case, but about his interview with Mr. Outhouse, and his errand up here. The interview was in regard to Outhouse's compromising his interest in this case. He thought that Mr. Outhouse wanted something else, and I told him what I thought Mr. Outhouse wanted. At that time I was acting as counsel for Mr. Outhouse about other matters. I was solicitor for him in the case of *Dunton, as Executor, v. George Outhouse and Sarah Outhouse*; but I think that case had been concluded. I was the attorney for the plaintiffs in this case, in the case of *Lewis G. Dunton and John T. Curtis v. Plaintiffs* in this cause, in the case in Kent circuit."

It requires but a casual examination of this testimony to see at once plainly that one of the plaintiffs stated his case on the merits in this action to Mr. Grove, before he became circuit judge, and consulted with him about compromising the same. And Mr. Grove talked with one of defendant's counsel about such compromise. He did not interfere with the case otherwise, because Outhouse had other counsel, and declined to meddle with it because of this fact. But nevertheless it is clear that Outhouse laid his whole case before him fully once, and perhaps oftener, and consulted him about a compromise, and Grove—

"Advised him strongly not to make any attempt to settle the case further than a compromise in his own behalf."

The requirements of the statute were fully met by this testimony alone, and, coming from the lips of the judge himself, it was indisputable. It matters not what interpretation the judge himself put upon the facts. He gives them in detail, so that we can judge of them as well as he. He may not have "considered that he had been consulted," because he was not paid for such consultation, and refused to act as an attorney. The fact remains that he was consulted, and gave advice; and it is not probable

that he would have been thus consulted had he not been an attorney at law; and when he was consulted it was with reference to his being employed as an attorney in the case, which he declined, because he did not wish to interfere with the attorneys already in the case. It is not singular that the judge himself did not wish to try the case, and proposed to bring another judge to the bench to hear it. The manifest impropriety of his hearing the case is clear, under his own testimony, without regard to the statute; and we are satisfied that he is disqualified under the statute.

The order of the commissioner is reversed and vacated, and, upon the showing made in this recörd before him, an order will be entered transferring the cause to the circuit court for the county of St. Joseph. The defendant will recover his costs in this Court.

The other Justices concurred.