THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH A. HAAS, Indicted under the Name of JOSEPH A. HAYES, alias HARRY J. CLARE, Appellant.

*Disqualification in a criminal action of a judge who has acted as counsel for an alleged accomplice of the defendant — the formal relation of client and attorney need not be established — section 46 of the Code of Civil Procedure applies to both civil and criminal trials — the denial of a motion to remove a cause to another court is appealable.*

Section 46 of the Code of Civil Procedure, relating to the disqualification of judges to preside at the trial of a cause, applies both to civil and criminal trials.

In order to invoke the provision of said section 46, which provides, " A judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party, or in which he has been attorney or counsel," it is not necessary to establish that the formal relation of lawyer and client once existed between the judge and litigant as to the cause or matter in question.

The section contemplates any service in that cause or matter rendered by a lawyer in his legal capacity as an officer of the court, even though the services were rendered gratuitously.

Thus, where it appears that the county judge who would preside at the trial of an indictment pending in the County Court had, when at the bar, acted as attorney for an alleged accomplice of the defendant and had had consultations and interviews with the defendant in relation to the indictments pending against the defendant and his alleged accomplice, the defendant is entitled to have the trial of the indictment removed from the County Court to the Supreme Court.

An order denying his motion for such removal affects a substantial right and is appealable to the Appellate Division.

BARTLETT, J., dissented.

APPEAL by the defendant, Joseph A. Haas, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Queens on the 15th day of December, 1903, denying the defendant's motion to remove the trial of the indictments in the action from the County Court of Queens county to the Supreme Court; also from a judgment of the County Court of Queens county in favor of plaintiff, entered on the 4th day of March, 1904, convicting the defendant of the crime of burglary in the first degree and sentencing him to State's prison; also from a second judgment of said County Court, entered on the 9th day of April, 1904, resentencing the defendant; also from an order of said County Court, entered in the office of the clerk of the county of Queens on the 4th day of March, 1904, denying the defendant's motion for a new trial made upon the minutes and on the ground of newly-discovered evidence, and also from an order entered in said clerk's office on the 10th day of May, 1904, denying the defendant's motion for a new trial and in arrest of judgment.

*Henry A. Monfort,* for the appellant.

*George A. Gregg,* for the respondent.

JENKS, J.:

Section 46 of the Code of Civil Procedure applies both to civil and to criminal trials. (*People* v. *Connor,* 142 N. Y. 130.) I think that an appeal lies from the order denying the motion to remove the trial of the indictment from the County Court to the Supreme Court on the ground that else the trial must be presided over by a judge who was within the prohibition of that section. It affects a substantial right within the meaning of that term as defined in *People* v. *N. Y. C. R. R. Co.* (29 N. Y. 418) and in *Martin* v. *Windsor Hotel Co.* (70 id. 101). An appeal of similar character was entertained and disposed of upon the merits by the General Term of the third department. (*People* v. *Frederick,* 21 N. Y. Supp. 26.)

The affidavit of defendant's attorney, supplemented by a written statement of the defendant in the form of an affidavit, but not verified, showed that the county judge elect, who would in course preside at

the trial, had acted as attorney for Ricco. Ricco was an alleged accomplice of the defendant. A witness turning State's evidence on a former trial testified that Ricco was associated with the defendant and others as a band of criminals. It was deposed that the said county judge elect as such attorney had consultation with the defendant upon these pending indictments, and that he " practically appeared as attorney and acted as attorney " for Ricco. The said statement of defendant, which is recited in the order, is that while he " was in jail he was interviewed by " said attorney " in reference to these cases pending against your deponent and against one Dominick Ricco, and that he always looked upon him as a sort of counsel in his case." The only answer to these allegations was the statement in the opposing affidavit of the district attorney that he " has spoken " to the county judge elect " in regard to the trial of the above-named indictments, and he informed deponent that he knew of no legal reason why he should not preside at the trial of said indictments."

Thus the answer of the judge is his legal conclusion. He does not gainsay or challenge the allegations or state any facts on his part.

It is not necessary to establish that the formal relation of lawyer and client once existed between judge and litigant as to that cause or matter in order to invoke the provision of said section 46, " A judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party, or in which he has been attorney or counsel." To my mind it contemplates any service in that cause or matter rendered by a lawyer in his legal capacity as an officer of the court. In *M'Laren* v. *Charrier* (5 Paige, 530, 533) the chancellor said : " And where a master, or any other judicial officer of this court has been called upon in his official character of solicitor or counsellor to give advice, or to prepare any papers or proceedings in a cause or matter pending or to be brought before the court, or where his law partner has been thus consulted or employed, although neither of them is the solicitor or counsel on record in the suit, nor has been regularly retained as such, he ought not afterwards to do any judicial or other act as master, &c., which requires the exercise of judgment or discretion, and which is in any way connected with the cause or matter in which he or his partner had previously been

employed in a different character." In *Curtis* v. *Wilcox* (74 Mich. 69), under a similar statute, the court say : "It matters not what interpretation the judge himself put upon the facts. He gives them in detail, so that we can judge of them as well as he. He may not have ' considered that he had been consulted,' because he was not paid for such consultation, and refused to act as an attorney. The fact remains that he was consulted and gave advice ; and it is not probable that he would have been thus consulted had he not been an attorney at law ; and when he was consulted it was with reference to his being employed as an attorney in the case, which he declined, because he did not wish to interfere with the attorneys already in the case. It is not singular that the judge himself did not wish to try the case, and proposed to bring another judge to the bench to hear it. The manifest impropriety of his hearing the case is clear, under his own testimony, without regard to the statute ; and we are satisfied that he is disqualified under the statute." It has been held, and I think rightly, that even where the services were gratuitous the rule obtains. (17 Am. & Eng. Ency. of Law [2d ed.], 740, and authorities cited.) In the third note to Cooley's Constitutional Limitations (7th ed. p. 595) it is said that the judgment is a nullity — " or if he (the Judge) has advised one of the parties upon his rights in regard to any fact involved in the case. (*Tampa St. R. & P. Co.* v. *Tampa Suburban R. Co.*, 30 Fla. 595 ; 11 So. 562 ; 17 L. R. A. 681.) So though the case in suit is not precisely the one in which he has been consulted. (*Newcome* v. *Light*, 58 Tex. 141.) "

However upright the judge, and however free from the slightest inclination but to do justice, there is peril of his unconscious bias or prejudice, or lest any former opinion formed *ex parte* may still linger to affect unconsciously his present judgment, or lest he may be moved or swayed unconsciously by his knowledge of the facts which may not be revealed or stated at the trial, or cannot under the rules of evidence. No effort of the will can shut out memory ; there is no art of forgetting. We cannot be certain that the human mind will deliberate and determine unaffected by that which it knows, but which it should forget in that process. It may be assumed that if Ricco and the defendant were charged with the commission of the same crimes, their interests were more or less in

common, and that some at least of the same facts and circumstances were involved in one case as in the other, which required legal advice as to their common interest.

And there is a further consideration beyond the security of parties, namely, the fair repute of justice for absolute impartiality. In *People ex rel. Roe* v. *Suffolk Common Pleas* (18 Wend. 550, 552), BRONSON, J., says: "But, independent of this consideration, the act complained of was calculated to impair the confidence of the opposite party in the impartiality of the officer, which is of itself an evil which should be carefully avoided. Next in importance to the duty of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge." (See, too, *Oakley* v. *Aspinwall*, 3 N. Y. 547.) It is true that Blackstone (3 Black. Comm. 361) wrote that by the laws of England in the time of Bracton and Fleta, a judge might be refused for good cause, "but now the law is otherwise and it is held that judges and justices cannot be challenged. For the law will not suppose a possibility of bias or favour in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea." And it is true that there are decisions contra. The American and English Encyclopædia of Law (*supra*, 733) cites two — (*Townsend* v. *Hughes*, 2 Mod. 150, and *Owings* v. *Gibson*, 2 A. K. Marsh. 515) and refers to *Denn* v. *Tatem* (1 N. J. L. 164). The learned chief justice in the *Tampa St. R. & P. Co. Case* (*supra*) adds *Bank of North America* v. *Fitzsimons* (2 Binn. 454). In *Townsend* v. *Hughes* (*supra*) the question was but incidental, for SCROGGS, J., in concurring, said he had been of counsel with the plaintiff, but now " he had forgot all former relation thereunto and, therefore, delivered his opinion." In *Owings* v. *Gibson* (*supra*) the court refused to grant a new trial. One of the grounds was that Owings had not attended because the presiding judge had been employed as counsel by Gibson. The court said that every engagement made by a lawyer to prosecute a suit does not forever disqualify him from adjudicating in the cause. " He may have been employed without having received any compensation, or without having given any advice or opinion upon any point involved in the controversy ; and, for aught that appears in the record," this may have been the fact in this case.

Further it is said that in any event Owings, if apprehensive, should have adopted means to remove the cause. In *Denn* v. *Tatem* (*supra*) the question was on striking a jury before the chief justice, and the objection was overruled. In *Bank of North America* v. *Fitzsimons* (*supra*) the motion was to withdraw a stated case, and the fact that the chief justice had given an opinion while at the bar in favor of the plaintiff was held not to be a ground for granting the motion, as it was not a cause of challenge. No such principle was involved in these cases as is fairly up in the case at bar, and none goes direct to the merits of the question now presented.

In *Darling* v. *Pierce* (15 Hun, 542), after discussing the statute, the court, per BOOKES, J., says : " But were there no statute in express terms disqualifying a judicial officer from adjudicating upon a matter as to which he had acted as counsel, we should be inclined to hold such action improper and good ground for alleging error. Such action is repugnant to one's sense of justice and right, and brings the administration of the law into disrepute by throwing strong suspicion upon the officer's impartiality. This doctrine is recognized in many cases. (*M'Laren* v. *Charrier*, 5 Paige, 530 ; *Ten Eick* v. *Simpson*, 11 id. 177 ; *Whicher* v. *Whicher*, 11 N. H. 348 ; *The People* v. *Suf. C. P.*,* 18 Wend. 550 ; *Oakley* v. *Aspinwall*, 3 N. Y. 549, 550 ; *Moses* v. *Julian*, 45 N. H. 52, 58.) To adopt the language of Judge BRONSON in one of the cases cited, ' next in importance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness or integrity of the judge.' In another of the cases cited, the court remarked that if a judge has acted as attorney, counsel, law advisor or advocate, in relation to the business in hand, that furnishes just cause of exception without reference to the time when such aid or counsel was given. And Judge HURLBUT remarked, in *Oakley* v. *Aspinwall* (*supra*), that ' the first idea in the administration of justice is that a judge must necessarily be free from all bias and partiality. He cannot be both judge and party, arbiter and advocate in the same cause. Mankind are so agreed in this principle, that any departure from it shocks their common sense and sentiment of justice.'" (See, too, *Curtis* v. *Wilcox*, *supra*, and the

---

* *People ex rel. Roe* v. *Suffolk Common Pleas.*— [REP.

learned discussion in the *Tampa St. R. & P. Co. Case, supra,* although there was not in the latter case a statute of disqualification.)

Our more recent policy is to hedge in our judges so that the most hypercritical will find no opening for their shafts. That we do " suppose a possibility of bias or favour in a judge," to cite the words of Blackstone (*supra*), or at least that we propose to put him beyond the danger of aberration or without the shadow of suspicion, is proved by our statutes of disqualification.

This motion was made in a criminal case, where the State is arrayed against the individual. Naught can be taken against him if he does not go upon the witness stand. He may avail himself of the statute of privilege in all communications with his counsel, for he may open his mind freely to his lawyer or to his physician and to his priest. If the learned county judge while at the bar advised or consulted with the defendant as a counsel, however informal the relation, how can he be absolutely certain that he will not unconsciously be affected by knowledge which he may have gained under this cloak of privilege? Could he exclude, no matter how honest his intention or earnest his effort, this knowledge when he considered the evidence adduced upon the trial? Might he not unconsciously eke out the evidence by his private knowledge thus gained? Might he not rule unconsciously influenced by knowledge common only to the defendant and himself? Might not his instructions to the jury be thus affected, though he be not conscious of the influence? If he knew from the communications made under privilege that the defendant was in fact guilty of the crime, would there not exist the unconscious wish that he should not escape conviction and punishment? I am now ascribing to the learned judge the highest motives in his desire to do justice. But, if the rule be as contended by the learned district attorney, is there not opportunity in some cases for the exercise of favoritism arising from this past relation? If the judge be even unconsciously prejudiced or unconsciously partial, he equally departs from his function. Moreover, the defendant is entitled to his trial upon the evidence, conducted by a judge enlightened by the evidence alone. There is a distinction between juridical and moral truth. (Whart. Ev. § 3.) The defendant has a right to insist that the truth gained by the judge should be juridical. He has a right to look for justice upon the evidence, not for justice

administered by one who is sworn to conduct the trial according to the evidence, and yet may be conscious of the moral truth of the case, gained through the communications of the defendant which were made under the supposed privilege of client and counsel. Assume that in this case the defendant had acknowleged his guilt to his counsel or supposed counsel. He has, in effect, been a witness against himself, not to the jury, but to the judge who conducts the course of that trial. Does he approach his trial confident " in the impartiality " of the officer under such circumstances? Let us take a plain, common sense view of the situation. Put the question to any intelligent citizen, and is there any doubt as to his answer?

These considerations, which are weighty to me, particularly in a criminal case, could not exist in the days when criminals were not allowed the privilege of counsel, and, therefore, were not within the thought of the then declarants of the common law. Indeed, statutory restrictions based upon the like principle were said to be declarations of existing law. (Revisers' Notes to R. S. pt. 3, chap. 3, tit. 1 [3 R. S. (2d ed.) 694].) And we may declare the common law. For it is founded upon the elementary principles of natural justice, which are perennial, expansive and adaptable to these times and the changes which have come with them. (*Hurtado* v. *California*, 110 U. S. 516, 530; *Pierce* v. *Proprietors of Swan Point Cemetery*, 10 R. I. 227, 240; *Norway Plains Co.* v. *B. & M. Railroad*, 1 Gray, 263.)

I do not intend the slightest reflection upon the learned county judge or upon his conduct, for I have no doubt that he was actuated by his honest opinion. But I am seeking a rule which should apply to all judges alike, and which, I think, should have been applied to the facts as shown upon the motion as presented.

I am of opinion that the order denying the motion to transfer the trial to the Supreme Court must be reversed, and that the motion must be granted. The conviction is, therefore, reversed, and a new trial must be had pursuant to the granting of the said motion.

RICH and MILLER, JJ., concurred; BARTLETT, J., dissented; HOOKER, J., not voting.

Order denying motion to transfer indictment reversed and motion granted; judgment of conviction reversed and new trial ordered.