## DAVIS v. SEAWARD et al.

. (Supreme Court, Special Term, Kings County.   April 1, 1914.)

1. JUDGES (§ 47*)—DISQUALIFICATION—ATTORNEY.
    In an action to enforce a legatee's rights under a will bequeathing testator's property to his wife and providing that such property as she should leave at her death should go to plaintiff, a judge of the Appellate Division was not disqualified under Judiciary Law (Consol. Laws, c. 30) § 15, merely because he had acted as attorney for the widow in attending to the execution of her will, where the sole question involved was whether there remained any of the personal property coming to her from her husband, and the construction or validity of her will was not involved.

    [Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 214–219, 222, 223; Dec. Dig. § 47.*]

2. WORDS AND PHRASES—"CAUSE"—"MATTER."
    "Cause" in legal terminology means an action, while the word "matter" may mean a special proceeding, or the subject of the controversy, commonly spoken of as the subject-matter.

    [Ed. Note.—For other definitions, see Words and Phrases, vol. 2, pp. 1009–1015; vol. 5, p. 4413; vol. 8, pp. 7597–7598, 7718.]

3. JUDGES (§ 47*)—DISQUALIFICATION—ATTORNEY—CONSTRUCTION OF STATUTE.
    Since the provision of Judiciary Law (Consol. Laws, c. 30) § 15, which disqualifies a judge from sitting in a cause or matter in which he has been attorney, creates a disqualification which did not exist at common law, its operation cannot be enlarged by construction.

    [Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 214–219, 222, 223; Dec. Dig. § 47.*]

4. JUDGES (§ 47*)—DISQUALIFICATION—ATTORNEY.
    That the services were performed by clerks or other members of the firm of which a judge was a member will not prevent him from being disqualified under Judiciary Law (Consol. Laws, c. 30) § 15, from sitting in a case in relation to which the firm has performed legal services.

    [Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 214–219, 222, 223; Dec. Dig. § 47.*]

5. JUDGES (§ 45*)—DISQUALIFICATION—RELATIONSHIP TO LITIGANT.
    In an action to enforce a legatee's rights under a will bequeathing testator's property to his wife and providing that such property as she should leave at her death should go to plaintiff, a judge of the Appellate Division was not disqualified under Judiciary Law (Consol. Laws, c. 30) § 15, merely because he was related by affinity within the sixth degree to a legatee under the widow's will, where the sole question involved was whether she left any of the estate received from her husband and the validity or the construction of her will was not involved.

    [Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 208–212; Dec. Dig. § 45.*]

. 6. JUDGMENT (§ 9*)—VALIDITY—DISQUALIFICATION OF JUDGE.
    That the judgment of the Appellate Division is void because of disqualification of a judge will not invalidate a decision of the Court of Appeals, or subsequent proceedings in the Supreme Court upon a retrial, where the law given by the Court of Appeals is applied.

    [Ed. Note.—For other cases, see Judgment, Dec. Dig. § 9.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. ACTION (§ 6*)—SCOPE OF INQUIRY—ACADEMIC QUESTIONS.

A court of equity will not undertake to pass on merely academic questions or on proceedings not injurious to litigants.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 40; Dec. Dig. § 6.*]

8. WILLS (§ 612*)—CONSTRUCTION—DISPOSITION OF PROPERTY.

Where testator bequeathed property to his wife with an absolute power of disposition and devise over of any remaining at her death, the fact that the wife changed the money part of the property from one bank to another, and turned into cash that part consisting of government bonds, did not amount to an absolute disposition of it so as to preclude it being applied as provided by her husband's will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1387–1392, 1608; Dec. Dig. § 612.*]

Action by Buell G. Davis, individually and as executor of Mary E. King, deceased, against George W. Seaward, with the will annexed of William Z. King, deceased, and others. Judgment for defendants.

See, also, 198 N. Y. 415, 91 N. E. 1107; 148 App. Div. 805, 133 N. Y. Supp. 384.

Clarence J. Shearn, of New York City, for plaintiff.

Alton B. Parker, of New York City, and Meier Steinbrink and Robert H. Wilson, both of Brooklyn, for defendants.

CRANE, J. Two questions are presented for my decision: First. Was Mr. Justice Joseph A. Burr disqualified from sitting in the Appellate Division upon the appeal in the case of George W. Seaward as Administrator, etc., v. Buell G. Davis as Executor, etc.? Second. If he were disqualified, what effect does it have, or can it have, upon the judgments in this case?

This controversy arises out of the following facts: William Z. King died in February of 1899 leaving a will containing the following provisions:

"Third: I give and bequeath all my personal property of every name and kind to my wife excepting my piano which I give to Lilly Corwin aforesaid.

"Whatever personal estate may remain at the decease of my wife I give and bequeath to Buell Davis and Abaigail Davis, the parents of my wife, or if they are not living then to my sisters aforesaid and Lilly Corwin share and share alike."

The law firm of Burr, Coombs & Wilson, employed by Mary E. King, the widow of William Z. King, probated the will, and thereafter conducted proceedings leading up to her accounting as executrix and final discharge. The will was probated April 27, 1899. The personal estate left by William Z. King amounted to approximately $17,000. In June of 1899 the said firm conducted for Mrs. King proceedings in the Surrogate's Court in Kings County, In the Matter of Appraisal under the Transfer Tax Act of the property of William Z. King, Deceased, and in connection therewith prepared an affidavit for Mrs. King, wherein she stated as follows:

"The personal property bequeathed to me by paragraph third of said will is an absolute bequest. The qualifications following that bequest are void, and I claim all the personal property absolutely under the provisions of the will."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Upon the accounting of Mrs. King as executrix a decree was entered May 18, 1900. It was prepared by Burr, Coombs & Wilson, and provided that Mrs. King—

"be permitted and allowed to sell the government bonds referred to in Schedule A. of her account remaining unsold, and of the face value of $12,000, and inventoried at $13,560, and turn over the proceeds of such sale to herself as sole legatee under the said will, or, if she so elect, to have the title of such bonds transferred to her. * * *

"It is further ordered that the said executrix, upon making the payments and turning over the property hereinbefore described, be discharged from all liability on account of her acts as such executrix as to the items embraced in this accounting."

The only property which Mary E. King had came to her upon this accounting and through her husband's will, with the exception of her meager dower obtained upon the settlement of an action brought therefor by the same firm of lawyers. This property, amounting approximately to $17,000, as before stated, consisted of United States government bonds appraised at $15,828, money in bank, and other personal property. Prior to the accounting Mrs. King had sold $2,000 par value of the bonds, and after the accounting, and on May 29, 1900, the office of Burr, Coombs & Wilson had the remaining bonds transferred at the Treasury Department to Mrs. King individually.

Certain wills were prepared by Burr, Coombs & Wilson for Mrs. King, one antedating November 20, 1899, and another drawn on May 8, 1901, in which she made bequests aggregating $12,100. For all of these services rendered to Mary E. King, either individually or as executrix of the estate of William Z. King, deceased, the firm of Burr, Coombs & Wilson were paid, and their relations as attorneys to the estate ended with the accounting in May of 1900 and to Mary E. King individually in May of 1901. Thereafter no legal services were performed by these attorneys for Mary E. King. She subsequently consulted a lawyer of Greenport, Long Island, Frederick H. Tasker, who drew another will for her, which after her death, in May, 1905, was admitted to probate. By this will Mrs. King attempted to dispose of the property which she possessed by making certain bequests, one in the sum of $1,000 to Jennie F. Douglass. Buell G. Davis was made the sole executor. All this personal estate remaining at the decease of his said wife William Z. King had given to his sisters and Lilly Corwin. Thereafter Cynthia A. Tuthill, as administratrix with the will annexed of the goods and chattels of William Z. King, deceased, commenced an action against Buell G. Davis as executor of the last will of Mary E. King to recover the property remaining at her decease, under the third clause of the husband's will. This action came on for trial at a Special Term of this court in December of 1905 and was dismissed, but the judgment of dismissal was reversed by the Appellate Division in July of 1907. 121 App. Div. 290, 105 N. Y. Supp. 672. Upon a retrial interlocutory judgment was entered in July of 1908, directing Buell G. Davis as executor to account for the property which Mary E. King had received from the estate of her husband, charging him with the full amount of the inventory of William Z. King's estate as filed by Mary E. King. Final judgment being entered, an appeal was taken to

the Appellate Division, where the judgment was modified in so far as it charged the executor with the amount of the inventory, holding that he should only account for the amount remaining at the time of Mrs. King's death, and which had come into his possession as executor. This appeal was decided in June of 1909, and is reported in 133 App. Div. 191, 117 N. Y. Supp. 468. Cynthia A. Tuthill having died, George W. Seaward on February 5, 1908, was substituted as plaintiff. In December, 1904, Joseph A. Burr of the firm of Burr, Coombs & Wilson had become a Justice of the Supreme Court, and was a member of the Appellate Division which heard and decided this appeal, writing a dissenting opinion therein. The case was carried to the Court of Appeals where the decision, reported in 198 N. Y. 415, 91 N. E. 1107, affirmed the Appellate Division in modifying the judgment of the lower court, and directed the accounting to proceed. Thereafter the accounting proceeded before a referee, and it was found that Mrs. King left at her decease personal property amounting to $15,861.92 which had come into the hands of her executor, and by final judgment entered on the 4th day of April, 1911, he was directed to turn it over to the plaintiff. Another appeal was taken to the Appellate Division, where the final judgment was affirmed with opinion, to be found in 148 App. Div. 805, 133 N. Y. Supp. 384. Mr. Justice Burr again sat in the Appellate Division, but did not vote. After contempt proceedings had been started Buell G. Davis, as executor, complied with this final judgment to the extent of turning over to the plaintiff property to the value of $14,536.37, leaving a balance unpaid of $1,325.55.

[1] It is now claimed in this action that all proceedings after and including the second appeal to the Appellate Division, wherein Justice Burr sat as a member of the court, are void for the reason that he was disqualified under section 15 of the Judiciary Law. The claim is twofold: First, that he was disqualified because he had been attorney or counsel in the cause or matter before him; second, because he was related by affinity to a party to the controversy within the sixth degree, to wit, that his wife was a first cousin to Benajah H. Douglass, husband of Jennie F. Douglass, a legatee under the will of Mary E. King, deceased.

Upon the hearing of this case no objection was raised to the maintenance of this action, or the power of this court to pass upon the questions presented, but rather it was stated that a full and complete submission of all the facts upon both sides was desired in that the claim of disqualification might, for obvious reasons, be speedily heard and disposed of. As the case comes to me the parties apparently acquiesce in the suggestion that if there were a disqualification in the Appellate Division, its judgment would be void, and that this court could at least vacate its own judgment based thereon. I pass, therefore, to the consideration of disqualification.

If Justice Burr were disqualified under the Judiciary Law, the judgments of the Appellate Division as reported in 133 App. Div. 191, 117 N. Y. Supp. 468, and 148 App. Div. 805, 133 N. Y. Supp. 384, were absolutely void. Oakley v. Aspinwall, 3 N. Y. 547. The Judiciary Law referred to reads as follows:

"A judge shall not sit as such in, or take any part in the decision of, a cause or matter to which he is a party, or in which he had been attorney or counsel, or in which he is interested, or if he is related by consanguinity, or affinity to any party to the controversy within the sixth degree."

[2] Are the words "cause or matter in which he has been attorney or counsel" broad enough to include the subject-matter? "Cause" in legal terminology means an action, while the word "matter" may mean a special proceeding, or the subject of the controversy commonly spoken of as the subject-matter. The term "In the Matter of" is familiar to every lawyer, and is the common way of referring to and entitling a certain class of litigation. Proceedings to probate wills, settle accounts, condemnation proceedings, and the like are but instances of proceedings entitled and referred to as "In the Matter of." Causes or actions are brought by a person known as the plaintiff against another person called defendant. By our Code all legal proceedings are divided into actions and special proceedings. Does this provision of the Judiciary Law, therefore, require that the judge must have been an attorney or counsel in the same action or the same special proceeding to disqualify him, or is it broader than this and inclusive of all actions and proceedings in which he has given advice and counsel relating to the subject-matter?

[3] In considering this statute we must remember that at common law a judge was disqualified if he was a party to the cause or interested in it—financially interested—but he was not disqualified by reason of having been counsel or attorney in the very same action he sat to hear or determine as a judge; this disqualification is purely statutory. 17 Am. & Eng. Ency. (2d Ed.) 740, 741; 23 Cyc. 576; Taylor v. Williams, 26 Tex. 583. Thus in the case of Thellusson v. Rendlesham, 7 House of Lord's Cas. 428, Lord St. Leonards sat in a case on appeal in which he had been counsel. When, therefore, a statute creates a disqualification which did not exist at common law, the statutory grounds are exclusive and cannot be enlarged. 17 Am. & Eng. Ency. of Law, 740, and cases cited under note 8. The reason for the decision of the Court of Appeals in Keeffe v. Third National Bank, 177 N. Y. 305, 69 N. E. 593, is therefore quite apparent. In that case the court determined that the words "cause or matter" in this section of the Judiciary Law, then section 46 of the Code of Civil Procedure, referred to an action or a special proceeding, and that the judge would not be disqualified unless he had been the attorney or counsel in the identical action or special proceeding brought before him as a judge. The facts in that case involved the actions of Justice Hiscock of the Supreme Court. His firm of Hiscock, Doheny & Hiscock, when he was a member of it, was given notes to collect, upon which an action was brought and a judgment obtained. Execution being issued, part of the amount was paid leaving a balance due. Thereafter Judge Hiscock went upon the Supreme Court bench and tried an action brought before him pertaining to this very judgment which his firm, while he was a member of it, had obtained. The purpose of the action was the collection of the balance of the judgment out of property which, as alleged, was held in trust for one of the judgment debtors. It was open to the defendants in such action to attack the judgment obtained by the firm of Hiscock, Do-

heny & Hiscock, even if they did not do so. Prentiss v. Bowden, 145 N. Y. 342, 40 N. E. 13. Subsequently an action was brought to set aside the judgment obtained before Judge Hiscock on the ground that it was void because of his disqualification; he having been an attorney in the cause or matter. The Court of Appeals, however, decided otherwise. To quote from that opinion:

"It seems quite clear that the words 'cause or matter' in section 46 were intended to refer only to actions or special proceedings in which a judge might sit or take part, the word 'cause' meaning a cause of action, and the word 'matter' referring only to some judicial matter or proceeding, and under the Code is included in special proceedings for the enforcement of civil rights. * * * Hence the ultimate and precise question presented is whether the trial justice acted as attorney or counsel *in the action which he heard and decided.* * * * While it is true that the second action was brought in aid of the judgment obtained in the first, yet it was an entirely independent and separate action, in which the parties were not the same, and the purpose of which was different. The issues in the two actions were essentially unlike. * *· * The contention of the appellants is that, as the general purpose of the first action was to collect the defendant's debt, and as the second action was in furtherance of the same purpose, they should be regarded as but one action, and as falling within the inhibition of section 46. *The infirmity of that contention lies in the fact that such is not the language of the statute.*"

This statement of the law as to the disqualification of a judge finds support in numerous authorities of other jurisdictions. In The Richmond (C. C.) 9 Fed. 863, the opinion states:

"The decisions, so far as I have been able to find, are unanimous that 'of counsel' means 'of counsel for a party in that cause and in that controversy,' and if either the cause or the controversy is not *identical* the disqualification does not exist."

The Court of Appeals of Maryland in Blackburn v. Craufurd, 22 Md. 447, speaking of their statute which disqualified a judge where he had been of counsel in the case, said:

"The fact that he was counsel in a case theretofore tried between two of the parties to the said bill, which 'involved some of the issues raised in the bill,' does not bring him within the letter or spirit of the constitutional inhibition. The former requires he should have been of counsel in the case then before him."

Section 170, Code of Civil Procedure of the State of California, provided:

"No * * * judge * * * shall sit or act as such in any action or proceeding, when * * * he has been attorney or counsel for either party * * * in the action or proceeding."

The Supreme Court of that state said of this provision in Cleghorn v. Cleghorn, 66 Cal. 309, 5 Pac. 516:

"It happens that the judge before whom this cause was tried had been, before his election to the bench, the attorney of the defendant in an action which involved one of the issues in this case, but that did not disqualify him to sit in the trial of this action, in which he had not been the attorney of either party."

In the case of Tampa Street Railway & Power Company v. Tampa Suburban Railroad Co., 30 Fla. 595, 11 South. 562, 17 L. R. A. 681, the plaintiff founded its right to recover upon state legislation, and it was

held that the defendant could not recuse the judge by showing that he had been an attorney for the plaintiff and had advised it as to its rights under municipal authority regarding the subject-matter of the controversy.

The Supreme Court of Louisiana in Stewart v. Mix, 30 La. Ann. 1036, gave the following as the law:

"The fact that a Justice of this court was of counsel for certain parties in two former suits is no ground for his recusation in a subsequent suit in which the same parties are litigants, when it appears that the validity of none of the proceedings and the decision of none of the questions involved in the previous suits are put in issue in the subsequent suit."

See, further, Cook v. Berth, 102 Mass. 372.

In the following cases to which I may refer it will be found upon examination that the judge was either attorney in the very cause which was before him, or had represented some one interested in the identical issue; People v. Haas, 105 App. Div. 119, 93 N. Y. Supp. 790; McLaren v. Charrier, 5 Paige, 530 (here a master in chancery was at the same time assisting one of the parties); People ex rel. Roe v. Suffolk Common Pleas, 18 Wend. 550. In Curtis v. Wilcox, 74 Mich. 69, 41 N. W. 863, cited in the Haas Case the statute read "has been consulted or employed as counsel in the *subject matter* in said suit." Hubbell v. Harbeck, 54 Hun, 147, 7 N. Y. Supp. 243; O'Brien v.  · Long, 49 Hun, 80, 1 N. Y. Supp. 695; Stebbins v. Brown, 65 Barb. 272; People v. Frederick, 21 N. Y. Supp. 26; McGregor v. Crane, 98 Mass. 530.

The following decisions, however, and the· facts upon which they are based, are irreconcilable with the decision of our Court of Appeals in the Keeffe Case above cited; Darling v. Pierce, 15 Hun, 542; State ex rel. Ambler v. Hocker, 34 Fla. 25, 15 South. 581, 25 L. R. A. 114; Slaven v. Wheeler, 58 Tex. 23.

Applying the law as laid down by the Court of Appeals in Keeffe v. Third National Bank, supra, to the facts in this case, Judge Burr was not disqualified, as he had not been attorney or counsel in the cause or proceeding before him. He had been attorney for Mrs. King in drawing her will, but her will was not before him for construction or interpretation, neither was its validity put in question. He had probated William Z. King's will, and had been the attorney in the proceedings to assess the property for the collateral inheritance tax, also the attorney in the accounting proceedings of Mrs. King as executrix; but none of these proceedings were on appeal before the Appellate Division, nor was their validity in question. That upon the accounting proceedings Mrs. King rightfully received all the property coming to her under her husband's will and was properly discharged has never been questioned. The firm of Burr, Coombs & Wilson were paid and discharged. Their relationship as attorney in any of these matters ended in 1901. In 1905, after Mr. Burr had become a Supreme Court Justice, Mrs. King died, and then for the first time question arose as to whether or not she had left any of the personal property coming to her from her husband. The question could not arise in any judicial proceeding before her death. The ·action

brought by Seaward against Davis was to determine this one question whether or not Mrs. King had disposed of all her personal property coming to her from her husband under his will, for it is now conceded that the provisions of William Z. King's will, giving whatever of his personal estate might remain at the death of his wife to his sisters, was valid. Justice Burr had never been attorney or counsel in this action or proceeding, and had never given any advice whatever regarding its merits.

It is true that if William Z. King had never made a will and Mrs. King had never received any money upon the accounting from his estate, the case of Seaward v. Davis could never have arisen. The will, the accounting, and the proceeds were all necessary for the maintenance of the Seaward action, and to this extent prior proceedings were involved, but they were not the issues which were before the Appellate Court for hearing. Certainly Mr. Justice Burr was no more disqualified on the appeal in the Seaward Case than was Justice Hiscock upon the trial of the Keeffe Case. In fact Justice Hiscock was nearer to disqualification in that the judgment recovered by him as an attorney might have been attacked upon the trial, while all the parties in Seaward v. Davis based their contention upon the regularity of prior proceedings. While the decree upon the accounting stated that Mrs. King took this property as sole legatee, yet this in no way extended her control of it, as under the will she had the conceded right to use up all the property anyhow, if she so desired. Although the papers thus drawn in the office of Burr, Coombs & Wilson were wrong in this particular, yet they in no way affected the case of Seaward v. Davis, as that action only related to what Mrs. King had remaining, and in no way questioned her right to use and dispose of the property in her lifetime.

[4] Evidence was presented before me showing the part which the members of the firm and the clerks had taken in these various matters. I deem it entirely immaterial for the purpose of this decision, for the reason that whatever was done by the clerks or by other members of the firm must be considered in law to have been done by Justice Burr as a member of that firm; the actions of Burr, Coombs & Wilson or their clerks would constructively be his acts. Following, therefore, the interpretation put upon the Judiciary Law by the Court of Appeals of this state, I conclude that Mr. Justice Burr was not disqualified by reason of having been the attorney or counsel in a cause or matter before him as a judge.

[5] Was Judge Burr disqualified by reason of his relationship? Under the will of Mary E. King, Jennie F. Douglass was given a fifth share of $5,000. Benajah H. Douglass was her husband, and also the first cousin of Mr. Justice Burr's wife. By affinity Benajah H. Douglass and Jennie F. Douglass were related to the judge within the sixth degree, and if Jennie F. Douglass as a legatee were a party to the controversy Mr. Justice Burr was disqualified. Jennie F. Douglass was not a party to the record, the action being George W. Seaward, as Administrator with the Will Annexed of the Goods, Chattels, and Credits which were of William Z. King, Deceased, Plaintiff,

against Buell G. Davis, as Executor of the Last Will and Testament of Mary E. King, Deceased, Defendant. Neither was the validity or construction of Mary E. King's will before the Appellate Division, nor the claim of Jennie F. Douglass to a legacy thereunder. As before stated, the sole question was whether there was any money in the estate of Mary E. King to which the provisions of this valid will could attach. It was said in the Matter of Dodge & Stevenson Mfg. Co., 77 N. Y. 101, 33 Am. Rep. 579, that—

"to exclude a judge from sitting in a case by reason of kinship, under the provisions of the Revised Statutes (2 R. S. [(1st Ed.) pt. 3, c. 3, tit. 1] p. 275, § 2), prohibiting him from sitting in any cause, 'in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties,' such kinship must exist between him and some person who is actually a party; it is not enough that he is related to some person not a party, who is or may be interested in the cause."

Accordingly it was decided that a stockholder of a corporation which is a party, related to a judge within the inhibited degree, does not disqualify the judge, as the stockholder, although interested, is not a party. Within the ruling of this case Buell G. Davis, as executor, etc., was, so far as the Judiciary Law applies, the party to the controversy, not Jennie F. Douglass. Searsburgh Turnpike Co. v. Cutler, 6 Vt. 316, p. 322.

What would be the effect of holding that legatees were parties to an action brought only in the name of an executor and which did not involve the validity or construction of the will, but merely the corpus of the estate? If the Judiciary Law regarding the judge's relationship applied to such legatees not parties of record, it would also apply to every creditor of the estate who by law has a claim upon the assets prior to that of legatees. It would make no difference whether the creditor was known or unknown, or whether the parties or the judge were aware of the circumstances, if the fact should be that a relative of the judge within the sixth degree were a creditor, all the proceedings would be void, and no consents or acquiescence could make them valid. The discovery of such a fact at any time would avoid the judgment. Thus, in an action upon a note or book account, or a contract, or to recover possession of personal property, the creditors, as well as legatees, would be interested in the recovery or loss, and yet if it should turn out that there was a creditor in existence unknown to anybody who was related within the inhibited degree to the judge, all proceedings would go for naught; they could be absolutely ignored as being void. The consequences of such a doctrine would be that no executor could sue or be sued with safety, and that no judge would dare sit in any such case unless he was so unfortunate as to be the last of his race. Authority, as well as reason, is therefore against the contention that Jennie F. Douglass was a party to the case of Seaward v. Davis.

I have confined myself strictly to passing upon the legal propositions which have been presented. Whether or not it was wise or proper for Mr. Justice Burr to sit in review of the case of Seaward against Davis is not submitted for my opinion. While I decide that he was not disqualified under the Judiciary Law, yet I cannot go to the extent claimed that, being qualified, he was obliged to sit. See Oakley v. Aspinwall, 3

N. Y. 547, at page 562; Matter of Dodge & Stevenson Mfg. Co., 77 N. Y. 101, at pages 112 and 113, 33 Am. Rep. 579; People ex rel. Devery v. Jerome, 36 Misc. Rep. 256, 73 N. Y. Supp. 306. There is a propriety and decorum which almost has the force of law, but it rests with the individual judge to determine whether the circumstances call upon him to apply it.

Again, this decision does not call for the expression of my opinion upon the professional ethics of Coombs & Wilson. The papers drawn in their office for Mrs. King when the firm was Burr, Coombs & Wilson erroneously stated that the remainder over of the legacy left to her was void, and that she took the property without any limitations. For drawing these papers they were paid. When Mrs. King died Coombs & Wilson brought the action as attorneys for Tuthill and Seaward, as above stated, claiming the reverse to that set forth by them in Mrs. King's affidavits, and the agreement for their services was to be one-third of the recovery. Whether or not such conduct was professional is a matter over which I have no jurisdiction; that rests entirely with the Appellate Division.

[6] Conceding, however, for the sake of argument that the judgment of the Appellate Division upon the second appeal as reported in 133 App. Div. 191, 117 N. Y. Supp. 468, was void because of the disqualification of that court, yet it could have no effect whatever upon the subsequent proceedings in this branch of the Supreme Court. When this judgment of the Appellate Division was taken to the Court of Appeals, that court laid down the law to be applied upon a re-hearing of the case, which it directed. Thereafter a trial was had before the referee and the rule given by the Court of Appeals applied, and the report of the referee confirmed by a final judgment. The fact that a decision of the intermediate court might be void could not weaken the decision of the Court of Appeals as an authority, nor affect the subsequent proceedings in this court upon a retrial, where the law as given by the Court of Appeals was applied. A similar situation would arise if a plaintiff had recovered a verdict at the trial term before a judge who was disqualified, and on appeal the judgment had been reversed and a new trial ordered, whereupon a new trial was had before a qualified judge, resulting in a verdict for the defendant. Could the plaintiff claim that the judgment on the second trial was void because the judge upon the first trial was disqualified? I think not. There must have been error on the retrial.

The plaintiff before the referee proceeded to prove the case as directed by the Court of Appeals, and did show, what is now conceded, that when Mary E. King died she had remaining in her possession over $15,000 which had come to her under her husband's will. As before stated, final judgment in April of 1911 confirmed the referee's findings directing the executor to pay over the money, and was affirmed by the Appellate Division in 148 App. Div. 805, 133 N. Y. Supp. 384, Woodward, J., writing the opinion, in which he stated that the court had very carefully examined the financial statement prepared by Buell G. Davis, and was of the opinion that the account was entirely in harmony with the suggestions made by the Court of

Appeals. The disqualification, if any, of the intermediate court would therefore be of no effect upon the subsequent proceedings.

[7] A court of equity will not undertake to pass upon merely academic questions, or set aside proceedings which can in no way harm the litigants before it. "Equity intervenes always for a reason and never needlessly." Prentiss v. Bowden, 145 N. Y. 342–346, 40 N. E. 13; Bispham's Equity, § 377; Matter of Gage, 141 N. Y. 112, 35 N. E. 1094, 25 L. R. A. 781; 2 Cyc. 533.

[8] It has been claimed, however (see opinion, Seaward v. Tasker, 80 Misc. Rep. 570, 141 N. Y. Supp. 618), that the law of the Court of Appeals was not applied before the referee, and upon the entry of final judgment in this case in April of 1911. It is there stated that Mary E. King absolutely disposed of her property by changing the money from one bank to another, and by turning the government bonds into cash; that although she died possessed of $15,000, all of which came from her husband's estate under his will, yet that this sum was not remaining at her death, and had been disposed of by her. I confess I cannot follow this reasoning. To my mind it makes no difference whether she was given the money for her own use, or with a beneficial power of disposition, or with an absolute power of disposition. The fact is she died possessed of $15,000, and therefore had neither used or disposed of that amount. Mrs. King, by changing the nature of the securities or the property which she received, did not absolutely dispose of it within the terms of any case that I can find. Cases like Terry v. Wiggins, 47 N. Y. 512; Crozier v. Bray, 120 N. Y. 366, 24 N. E. 712; Leggett v. Firth, 132 N. Y. 7, 29 N. E. 950, hold that where a person is given real property with an absolute power of disposition and devise over of any remaining, a sale of the property by the devisee gives a title in fee free from any limitations of remainders. These cases would be applicable to the situation here if Seaward, as administrator, etc., had brought action against the purchasers of the government bonds to impress upon them a trust in favor of William Z. King's sisters, but such was not the action. The purchaser of the bonds got a good title, but the provisions of William Z. King's will applied to any of the personal property in whatsoever form remaining at Mrs. King's death. See Swarthout v. Ranier, 143 N. Y. 499, 38 N. E. 726; Rose v. Hatch, 125 N. Y. 427, 26 N. E. 467; Terry v. Rector of St. Stephens' Church, 79 App. Div. 527, 81 N. Y. Supp. 119.

But even if the decision of the Court of Appeals had not been followed by the final judgment, the only method of reviewing the matter was and is by appeal.

If Buell G. Davis as executor is of the opinion that the last appeal was also heard by a disqualified court, there is no reason that I know of why he cannot now apply to that tribunal for a rehearing of the case.

If this case has heretofore been carefully sifted and every point minutely scrutinized, it is, in my opinion, due to the fact that Buell G. Davis, the executor, was kept in jail for four months, although guilty of no act amounting to a moral wrong. In June of 1911 he

was adjudged guilty of contempt for failure to pay over the $15,-861.92 as directed by the final judgment. After this order of contempt, and on June 6, 1911, he turned over as directed $14,536.37, leaving a balance of only $1,325.55. Two days thereafter he went to jail for failure to pay this balance, all upon the motion and insistence of Coombs & Wilson, who had a contingent fee interest of one-third in the amount. If the papers drawn in the office of Burr, Coombs & Wilson were correct in their recitals, Buell G. Davis, as executor of the estate of Mary E. King, was justified in believing that any remainder over in the personalty was void, and that she had a right to will away the property. In a situation thus created by the opposing lawyers themselves, they might well have stopped with the collection of $14,536.37, without pressing further for the balance of $1,325.55. The fact that Davis went to jail at all would indicate that he had no more money. When, however, it appears that after staying in prison for three months he made application for discharge, showing not only ill health, but the payment of all this balance for legal services, and that this application for discharge was opposed by Coombs & Wilson, comment is unnecessary; the facts speak for themselves. Sufficient to say that every objection and every criticism that could possibly be made to any step in the entire proceeding, by Buell G. Davis, or others in his behalf, could well have been expected —it had been unnecessarily invited.

Judgment for the defendants, without costs.